## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF ILLINOIS
## EAST ST. LOUIS DIVISION

| | |
|---|---|
| Kenneth Crawford, individually and on behalf of all others similarly situated, | 3:22-cv-00220 |
| Plaintiff, | |
| - against - | Class Action Complaint |
| Arizona Beverages USA LLC, | |
| Defendant | Jury Trial Demanded |

Plaintiff alleges upon information and belief, except for allegations pertaining to Plaintiff, which are based on personal knowledge:

1.      Arizona Beverages USA LLC ("Defendant") manufactures, labels, markets, and sells a combination of iced tea and lemonade, known as an "Arnold Palmer," in 20 oz bottles, represented as "Lite," under the Arizona brand (the "Product").

## I.      CONSUMERS SEEK PRODUCTS WITH LESS SUGAR AND CALORIES

2.      Due to awareness of harms from excess calorie and sugar intake, consumers are increasingly purchasing foods which contain fewer calories and sugar.

3.      Reasonable consumers "clearly link sugar to calories," and expect a food or beverage with lower sugar will have lower calories, and vice versa. N.J. Patterson et al., "Consumer understanding of sugars claims on food and drink products." Nutrition bulletin 37.2 (2012): 121-130.

4.      The reduction in sugar and calories can help avert numerous health problems, including weight gain, Type 2 diabetes, dental caries, metabolic syndrome and heart disease, and even cancer because of certain cancers' relationship to obesity.

5.      As "sugar avoidance [is] a macro trend 'that is here to stay and will only increase,'"

companies have sought to promote products with less sugar and fewer calories.

6.      Surveys confirm a growing number of consumers are buying products with less sugar to decrease their caloric intake, with 85% doing so for health reasons and 58% for weight concerns.

## II.   MISLEADING USE OF THE TERM "LITE"

7.      The Product's front label statements include "Half & Half," "Iced Tea Lemonade" "Arnold Palmer" and "Lite."

 

8.      Collins Dictionary defines "lite" as "used to describe foods or drinks that contain few calories or low amounts of sugar."

9.      Dictionary.com defines "lite" as "noting a commercial product that is low in calories or low in any substance considered undesirable, as compared with a product of the same type."

10.    Oxford Dictionary defines "lite" as relating to low-fat or low-sugar versions of manufactured food or drink products."

11.    These definitions recognize that "lite" can be used as an absolute statement, but also as a relative statement, comparing one thing to another.

12.    "Lite" is defined similarly by the FDA and considered a nutrient content claim.

13.    Nutrient content claims are the terms and descriptors used in labeling foods and beverages.

14.    These claims are subject to federal and identical state regulations to prevent consumers from being misled where claims are used in a way that is not consistent with the message they convey to consumers. 21 C.F.R. § 101.13; 21 C.F.R. §§ 101.54-101.69 ("Subpart D – Specific Requirements for Nutrient Content Claims").

A.    "Lite" is Misleading with Respect to the Product's Sugar Content

15.    "Lite" is understood by consumers to indicate a product which is low in sugar.

16.    However, claims that make absolute statements about the amount of sugar a product contains are prohibited.

17.    While claims for the absence of ("no…"), and relative ("fewer calories," "less sugar") amounts, of calories and sugar, are authorized with restrictions, a straight "low sugar" claim, like "lite," is not allowed. 21 C.F.R. § 101.60(c).

18.    The FDA issued warned companies making "low sugar" claims:

The labeling for your "Fruit of the Spirit" product, located on the website [url omitted] contains the nutrient content claim "Low sugar." While FDA has defined some nutrient content claims for sugar in 21 CFR 101.60(c), FDA has not defined "Low sugar"; therefore, the use of this claim misbrands your product under section 403(r)(1)(A) of the Act. The claim "lower sugar" may be used…")

FDA Warning Letter to CK Management, Inc., May 19, 2015.

19.    Far from being "Lite" and low in sugar, sugar is the second most predominant ingredient in the Product by weight.



INGREDIENTS: PREMIUM BREWED BLEND OF BLACK TEAS USING FILTERED WATER, CANE SUGAR, LEMON JUICE FROM CONCENTRATE, PEAR JUICE FROM CONCENTRATE, CITRIC ACID, ASCORBIC ACID (VITAMIN C), NATURAL FLAVORS, GUM ACACIA, ESTER GUM

20.    The Product's Nutrition Facts reveals thirty-one (31) grams of added sugar, which is 62 percent of the Daily Value ("DV").

4



21.    The Product is not only not 'low' in added sugars but would be considered 'high' in added sugars.

22.    While the FDA has not defined "low" claims about sugar, it has set criteria for low and high claims for other nutrients.

23.    "Low" claims are those where the amount of the nutrient is between five (5) and seven (7) percent of the daily value ("DV") per Reference Amount Customarily Consumed ("RACC").

24.    "High" claims are those where the amount of the nutrient is at least twenty (20) percent of the DV per RACC.[1]

25.    The RACC for beverages is 360 mL (12.173 oz).

26.    Based on 31 g of added sugar in a serving size of 20 oz, the Product contains 19 g/sugar per RACC.

_____

[1] 21 C.F.R. § 101.54.

27.     This means that if a comparable standard for DV of sugars was set, the Product would contain approximately 38 percent of the DV for added sugars per RACC.

28.     A product which contains 38 percent of the DV for sugars yet is represented as "Lite" poses a specific a specific risk of harm to consumers seeking to lower their sugar consumption, including those with diet-related diseases, such as Type 2 diabetes.

B.   "Lite" is Misleading with Respect to the Product's Calorie Content

29.     "Lite" is also understood as a "relative claim," to compare one food to another food. 21 C.F.R. § 101.56.

30.     "Lite" tells consumers that consumption of the Product, when compared to other foods in its class, will contribute substantially to the reduction of calories in their diets. 21 C.F.R. § 101.60(b)(4).

31.     Nutrient content claims for calories are intended to prevent consumers being deceived by a product implying it is low in calories when it is not. 21 C.F.R. § 101.60(b)(1).

32.     Since the Product derives less than 50 percent of its calories from fat, the number of calories in the Product must be reduced by at least one-third (33 1/3 percent) per reference amount customarily consumed compared to an appropriate reference food. 21 C.F.R. § 101.56(b)(2).

33.     Relative claims are required to have certain additional information, including "the identity of the reference food and the percentage (or fraction) of the amount of the nutrient in the reference food by which the nutrient in the labeled food differs," such as "1/3 fewer calories than (reference food)')." 21 C.F.R. § 101.13(j)(2)(i).

34.     The reference food, defined as "representative of the type of food that includes the product that bears the claim…The nutrient value for the reference food shall be representative of a broad base of foods of that type; e.g., a value in a representative, valid data base." 21 C.F.R. §

101.13(j)(1)(ii)(A).

35.    Relevant regulations require that the "reference food" be indicated on the packaging so the consumer will have context for a product's claim.

36.    The Product's representation as "Lite" is misleading because it does not identify any other food.

37.    The Product's representation as "Lite" is misleading because it is not low in calories.

38.    The absence of a reference food may be because a single-serving bottle has almost as many calories as a can of soda, and more sugar.

39.    In other words, a reference food likely does not exist for the Product because it contains an absolute, high number of calories per RACC.

## III.   MISLEADING DECLARATION OF SERVING SIZE

40.    The Product is sold in bottles of 20 oz.

41.    The reference amount customarily consumed ("RACC") for non-carbonated beverages is 12 oz (360 mL).

42.    The Product's 20 oz is 167 percent of the RACC, which meets the regulatory definition for a single-serving container.

43.    Therefore, the serving size is "1 bottle" and not the 12-oz indicated on the Nutrition Facts. 21 C.F.R. § 101.9(b)(6).

44.    However, the Nutrition Facts provides "dual column" labeling which presents consumers with the number of calories "per serving" (80) and "per container" (130).



45.    Research demonstrates that package and portion sizes have a considerable impact on the amount of food consumed.

46.    While a consumer may hope to consume part of the bottle – 80 calories – evidence suggests otherwise, and they will consume the entire bottle.

47.    Consumers will generally consume an entire beverage when it is packaged and presented in a 20 oz bottle.

48.    By presenting the Nutrition Facts in the dual column format, it is inconsistent with the information required to maintain healthy dietary practices by implying that it is reasonable to consume less than the entire container, or only 80 calories.

## IV.    USA CLAIMS

49.    The Product contains a map of the United States covered in the image of the American flag, and states "An American Company – Family Owned and Operated."

50.    The references to America, the map of the United States, and the flag, give consumers

the impression the Product is made in the United States.

51.    However, these claims and messages are false and misleading, because the Product is a "Product of Canada."



## V.    CONCLUSION

52.    The Product contains and makes other representations and omissions which are false or misleading.

53.    Reasonable consumers must and do rely on a company to honestly identify and describe the components, attributes, and features of a product, relative to itself and other comparable products or alternatives.

54.    The value of the Product that Plaintiff purchased was materially less than its value as represented by Defendant.

55.    Defendant sold more of the Product and at higher prices than it would have in the absence of this misconduct, resulting in additional profits at the expense of consumers.

56.    Had Plaintiff and proposed class members known the truth, they would not have

bought the Product or would have paid less for it.

57.    As a result of the false and misleading representations, the Product is sold at a premium price, approximately no less than no less than $1.99 for 20 OZ, excluding tax and sales, higher than similar products, represented in a non-misleading way, and higher than it would be sold for absent the misleading representations and omissions.

Jurisdiction and Venue

58.    Jurisdiction is proper pursuant to Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

59.    The aggregate amount in controversy exceeds $5 million, including any statutory damages, exclusive of interest and costs.

60.    Plaintiff Kenneth Crawford is a citizen of Illinois.

61.    Defendant Arizona Beverages USA LLC is a New York limited liability company with a principal place of business in Woodbury, Nassau County, New York and upon information and belief, at least one member of defendant is not a citizen of the same state as the plaintiff.

62.    Plaintiff and Defendant are citizens of different states.

63.    The members of the class Plaintiff seeks to represent are more than 100, because the Product has been sold for several years, in thousands of locations, in the states covered by Plaintiff's proposed classes.

64.    The Product is available to consumers from third-parties, which includes grocery stores, dollar stores, warehouse club stores, drug stores, convenience stores, big box stores, and online.

65.    Venue is in the East St. Louis Division in this District because a substantial part of the events or omissions giving rise to these claims occurred in St. Clair County, i.e., Plaintiff's

purchase, consumption, and/or use of the Product and awareness and/or experiences of and with the issues described here.

Parties

66.    Plaintiff Kenneth Crawford is a citizen of East Saint Louis, St. Clair County, Illinois.

67.    Defendant Arizona Beverages USA LLC is a New York limited liability company with a principal place of business in Woodbury, New York, Nassau County.

68.    Arizona is a leading seller of non-carbonated beverages for over four decades.

69.    Arizona is known for its commitment to quality ingredients, transparency, and putting consumers first.

70.    Arizona's high reputation among consumers means they are more likely to trust its labeling and promises.

71.    Arizona products are recognized worldwide for their elaborate and unique artwork, rendering them instantly identifiable by consumers.

72.    The Product is available to consumers from third-parties, which includes grocery stores, dollar stores, warehouse club stores, drug stores, convenience stores, big box stores, and online.

73.    Plaintiff purchased the Product on one or more occasions within the statutes of limitations for each cause of action alleged, at BP Stations, at locations including 2 Rauckman Dr Caseyville IL 62232-2300 between January 2021 and January 2022, among other times.

74.    Plaintiff believed the Product was low in sugar and calories, and lower in sugar and calories than comparable beverages.

75.    Plaintiff bought the Product because he expected it was low in sugar and calories, and lower in sugar and calories than comparable beverages because that is what the representations

said and implied.

76.    Plaintiff relied on the words, layout, packaging, and/or images on the Product, on the labeling, statements, omissions, and/or claims made by Defendant in digital, print and/or social media, which accompanied the Product and separately, through in-store, digital, audio, and print marketing.

77.    Plaintiff was disappointed because he believed the Product was low in sugar and calories, and lower in sugar and calories than comparable beverages.

78.    Plaintiff bought the Product at or exceeding the above-referenced price.

79.    Plaintiff would not have purchased the Product if he knew the representations and omissions were false and misleading or would have paid less for it.

80.    Plaintiff chose between Defendant's Product and products represented similarly, but which did not misrepresent their attributes, features, and/or components.

81.    The Product was worth less than what Plaintiff paid and he would not have paid as much absent Defendant's false and misleading statements and omissions.

82.    Plaintiff intends to, seeks to, and will purchase the Product again when he can do so with the assurance the Product's representations are consistent with its abilities, attributes, and/or composition.

83.    Plaintiff is unable to rely on the labeling and representations not only of this Product, but for other similar non-carbonated beverages that are low in sugar and calories and lower in sugar and calories than comparable beverages, because he is unsure whether those representations are truthful.

## Class Allegations

84.     Plaintiff seeks certification under Fed. R. Civ. P. 23 of the following classes:

> **Illinois Class:** All persons in the State of Illinois who purchased the Product during the statutes of limitations for each cause of action alleged; and

> **Consumer Fraud Multi-State Class**: All persons in the States of Iowa, Louisiana, West Virginia, Michigan, Texas, Arkansas, Georgia, Montana, Ohio, Indiana, Nebraska, Alabama, Virginia and Oklahoma, who purchased the Product during the statutes of limitations for each cause of action alleged.

85.     Common questions of issues, law, and fact predominate and include whether Defendant's representations were and are misleading and if Plaintiff and class members are entitled to damages.

86.     Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same unfair and deceptive representations and actions.

87.     Plaintiff is an adequate representative because his interests do not conflict with other members.

88.     No individual inquiry is necessary since the focus is only on Defendant's practices and the class is definable and ascertainable.

89.     Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

90.     Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

91.     Plaintiff seeks class-wide injunctive relief because the practices continue.

Illinois Consumer Fraud and Deceptive Business Practices Act
("ICFA"), 815 ILCS 505/1, et seq.

(Consumer Protection Statute)

92.    Plaintiff incorporates by reference all preceding paragraphs.

93.    Plaintiff and class members desired to purchase a product that was low in sugar and calories, and lower in sugar and calories than comparable beverages.

94.    Defendant's false and deceptive representations and omissions are material in that they are likely to influence consumer purchasing decisions.

95.    Defendant misrepresented the Product through statements, omissions, ambiguities, half-truths and/or actions.

96.    Plaintiff relied on the representations that the Product was low in sugar and calories, and lower in sugar and calories than comparable beverages.

97.     Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

Violation of State Consumer Fraud Acts

(On Behalf of the Consumer Fraud Multi-State Class)

98.    The Consumer Fraud Acts of the States in the Consumer Fraud Multi-State Class are similar to the above-referenced consumer protection statute and prohibit the use of unfair or deceptive business practices in the conduct of trade or commerce.

99.    Defendant intended that each of members of the Consumer Fraud Multi-State Class would rely upon its deceptive conduct, and a reasonable person would in fact be misled by this deceptive conduct.

100.  As a result of Defendant's use or employment of artifice, unfair or deceptive acts or

business practices, each of the other members of the Consumer Fraud Multi-State Class have sustained damages in an amount to be proven at trial.

101.   In addition, Defendant's conduct showed motive, and the reckless disregard of the truth such that an award of punitive damages is appropriate.

<u>Breach of Contract</u>

102.   Plaintiff entered into a contract with Defendant for purchase of the Product.

103.   The terms of the contract provided that the Product was low in sugar and calories, and lower in sugar and calories than comparable beverages.

104.   Defendant breached the contract because the Product did not meet the terms Plaintiff agreed to.

105.   Plaintiff was damaged by the breach, and those damages include the purchase price.

<u>Breaches of Express Warranty,</u>
<u>Implied Warranty of Merchantability/Fitness for a Particular Purpose and</u>
<u>Magnuson Moss Warranty Act, 15 U.S.C. §§ 2301, <i>et seq</i>.</u>

106.   The Product was manufactured, identified, and sold by Defendant and expressly and impliedly warranted to Plaintiff and class members that it was low in sugar and calories, and lower in sugar and calories than comparable beverages.

107.   Defendant directly marketed the Product to Plaintiff and consumers through its advertisements and marketing, through various forms of media, on the packaging, in print circulars, direct mail, and targeted digital advertising.

108.   Defendant knew the product attributes that potential customers like Plaintiff were seeking and developed its marketing and labeling to directly meet those needs and desires.

109.   Defendant's representations about the Product were conveyed in writing and promised it would be defect-free, and Plaintiff understood this meant the Product was low in sugar

and calories, and lower in sugar and calories than comparable beverages.

110.   Defendant's representations affirmed and promised that the Product was low in sugar and calories, and lower in sugar and calories than comparable beverages.

111.   Defendant described the Product as one which was low in sugar and calories, and lower in sugar and calories than comparable beverages, which became part of the basis of the bargain that the Product would conform to its affirmations and promises.

112.   Defendant had a duty to disclose and/or provide non-deceptive descriptions and marketing of the Product.

113.   This duty is based on Defendant's outsized role in the market for this type of Product, the largest independent seller of non-carbonated beverages in the nation, known for its transparency, established history of quality, and putting consumers first.

114.   Plaintiff recently became aware of Defendant's breach of the Product's warranties.

115.   Plaintiff provided or will provide notice to Defendant, its agents, representatives, retailers, and their employees.

116.   Plaintiff hereby provides notice to Defendant that it has breached the express and implied warranties associated with the Product.

117.   Defendant received notice and should have been aware of these issues due to complaints by third-parties, including regulators, competitors, and consumers, to its main offices, and by consumers through online forums.

118.   The Product did not conform to its affirmations of fact and promises due to Defendant's actions.

119.   The Product was not merchantable because it was not fit to pass in the trade as advertised, not fit for the ordinary purpose for which it was intended and did not conform to the

promises or affirmations of fact made on the packaging, container or label.

120.  The Product was not merchantable because Defendant had reason to know the particular purpose for which the Product was bought by Plaintiff, because he expected it was low in sugar and calories, and lower in sugar and calories than comparable beverages, and he relied on Defendant's skill and judgment to select or furnish such a suitable product.

121.  Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Negligent Misrepresentation</u>

122.  Defendant had a duty to truthfully represent the Product, which it breached.

123.  This duty was non-delegable, and based on Defendant's position, holding itself out as having special knowledge and experience in this area, the largest independent seller of non-carbonated beverages in the nation, known for its transparency, established history of quality, and putting consumers first.

124.  Defendant's representations regarding the Product went beyond the specific representations on the packaging, as they incorporated its extra-labeling promises and commitments to quality, transparency and putting customers first.

125.  These promises were outside of the standard representations that other companies may make in a standard arms-length, retail context.

126.  The representations took advantage of consumers' cognitive shortcuts made at the point-of-sale and their trust in Defendant.

127.  Plaintiff and class members reasonably and justifiably relied on these negligent misrepresentations and omissions, which served to induce and did induce, their purchase of the Product.

128.  Plaintiff and class members would not have purchased the Product or paid as much if the true facts had been known, suffering damages.

<u>Fraud</u>

129.  Defendant misrepresented and/or omitted the attributes and qualities of the Product, that it was low in sugar and calories, and lower in sugar and calories than comparable beverages.

130.  Moreover, the records Defendant is required to maintain, and/or the information inconspicuously disclosed to consumers, provided it with actual and constructive knowledge of the falsity, through statement and omission, of the representations.

131.  Defendant knew of the issues described here yet did not address them.

132.  Defendant's fraudulent intent is evinced by its knowledge that the Product was not consistent with its representations.

<u>Unjust Enrichment</u>

133.  Defendant obtained benefits and monies because the Product was not as represented and expected, to the detriment and impoverishment of Plaintiff and class members, who seek restitution and disgorgement of inequitably obtained profits.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1.  Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;

2.  Entering preliminary and permanent injunctive relief by directing Defendant to correct the challenged practices to comply with the law;

3.  Injunctive relief to remove, correct and/or refrain from the challenged practices and representations, and restitution and disgorgement for members of the class pursuant to the

applicable laws;

4. Awarding monetary damages, statutory and/or punitive damages pursuant to any statutory claims and interest pursuant to the common law and other statutory claims;

5. Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and

6. Other and further relief as the Court deems just and proper.

Dated:   February 6, 2022

Respectfully submitted,

Sheehan & Associates, P.C.
/s/Spencer Sheehan
60 Cuttermill Rd Ste 409
Great Neck NY 11021
Tel: (516) 268-7080
spencer@spencersheehan.com