**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **KENNETH CRAWFORD, individually and on behalf of all others similarly situated,** | ) | |
| **Plaintiff,** | ) | |
| **vs.** | ) | **Case No. 22-cv-220-DWD** |
| **ARIZONA BEVERAGES USA LLC,** | ) | |
| **Defendant.** | ) | |

**MEMORANDUM AND ORDER**

**DUGAN, District Judge:**

Plaintiff Kenneth Crawford[1] brings this putative class action against Defendant AriZona Beverages USA, LLC[2] for the alleged deceptive and misleading labeling of its 20oz "Lite Arnold Palmer" beverage. Plaintiff seeks monetary damages and injunctive relief for unfair business practices and deceptive advertising in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. Ann. 505/1, *et seq*. ("ICFA") and similar state consumer fraud acts. Plaintiff also asserts claims for breach of contract, breach of express and implied warranties, and the Magnuson Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*, along with negligent misrepresentation, fraud, and unjust enrichment. Now before the Court is Defendant's motion to dismiss (Doc. 14).

---

[1] Plaintiff is a citizen of Illinois (Doc. 1, ¶ 60).

[2] Defendant is a limited liability company organized under the laws of the State of New York with a principal place of business located in Woodbury, New York, and with at least one member having a different citizenship from Plaintiff (Doc. 1, ¶ 62). Accordingly, Defendant is a citizen of New York for purposes of determining CAFA jurisdiction. *See* 28 U.S.C. § 1332(d)(2).

Defendant seeks to dismiss Plaintiff's complaint, with prejudice, pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). Plaintiff opposes the Motion (Doc. 19).

**Background**

Plaintiff alleges the following facts, which for the purposes of this motion are taken as true. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). Defendant manufacturers the 20oz Lite Arnold Palmer" beverage (the "Product"). Between January 2021 and January 2022, Plaintiff purchased the Product from a third-party on one or more occasions in Caseyville, Illinois (Doc. 1, ¶¶ 66-73). Below is an image of the Product label:




(Doc. 14-3, p. 2).

Plaintiff claims the label contains at least four false or misleading representations. The first two representations concern Defendant's use of the word "Lite." Plaintiff claims the use of the word "Lite" is misleading because the reasonable consumer would understand the term to mean that the Product is low in both sugar and calories, or lower in sugar and calories than other products. However, Plaintiff alleges that the Product is neither low in sugar or calories, but instead would qualify as a "high" sugar product

under comparable FDA regulations and contains a similar number of high calories to that of a can of soda (Doc. 1, pp. 5-6). Plaintiff also complains that the label fails to identify a "reference food" so that consumers can compare the Product's "lite" claim to that of another representative product with higher nutrient values in accordance with FDA regulations (Doc. 1, pp. 6-7).

Next, Plaintiff claims that the Product's use of a "dual column" nutrition facts panel to show a serving size of 12 ounces is misleading because the entire 20-ounce bottle meets the regulatory definition for a single-serve container (Doc. 1, p. 7). Plaintiff argues that the dual column format of the label is inconsistent with the "information required to maintain healthy dietary practices", and thus misleading, because it implies that a consumer will consume less than the entire container when they would instead consume the entire bottle. Finally, Plaintiff contends that the Product falsely claims to be made in the United States because the label depicts a map of the United States covered in the image of the American flag and surrounded by the words "An American Company – Family Owned and Operated" (Doc. 1, ¶¶ 49-51). However, elsewhere on the label – just below the barcode – the label states that the Product is a "Product of Canada" (*Id.*; Doc. 14-2, p. 2).

Plaintiff alleges that he was damaged when he paid a premium for the Product, believing it to be low in sugar and calories, and lower in sugar and calories than comparable beverages (Doc. 1, ¶ 77). Plaintiff claims he would not have purchased the Product if he knew the representations and omissions were false and misleading (Doc. 1, ¶ 78). Alternatively, he would have paid less for it.

**Discussion**

Defendant seeks to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). Defendant argues that Plaintiff failed to allege any facts plausibly suggesting that a reasonable consumer would be misled by the Product's label when it is read in its entirety. Defendant also argues that its use of a dual column nutrition facts panel complies with FDA regulations, and thus maintains that Plaintiff's complaint is preempted by the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301, *et seq.*, and triggers the safe-harbor provision of the Illinois Consumer Fraud Act, 815 Ill. Comp. Stat. Ann. 10b(1) (Doc. 14-1). Defendant also challenges Plaintiff's Article III standing to obtain an injunction.

A Fed. R. Civ. P. 12(b)(1) motion challenges federal jurisdiction, including Article III standing, and the party invoking jurisdiction bears the burden of establishing the elements necessary for standing. *Thornley v. Clearview AI, Inc.*, 984 F.3d 1241, 1244 (7th Cir. 2021); *Int'l Union of Operating Engineers, Loc. 139, AFL-CIO v. Daley*, 983 F.3d 287, 294 (7th Cir. 2020). Under Rule 12(b)(1), the Court accepts all well-pleaded factual allegations as true and construes all reasonable inferences in the plaintiff's favor when a defendant has facially attacked standing. *Prairie Rivers Network v. Dynegy Midwest Generation, LLC*, 2 F.4th 1002, 1007 (7th Cir. 2021).

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) tests the sufficiency of the complaint, not its merits. *Skinner v. Switzer*, 562 U.S. 521, 529 (2011). When considering dismissal of a complaint, the Court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in favor of the plaintiff. *Erickson v.*

*Pardus*, 551 U.S. 89, 94 (2007) (per curiam). To survive a motion to dismiss, plaintiff must "state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint is facially plausible when the plaintiff alleges enough "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

**A. Injunctive Relief**

Defendant argues that Plaintiff lacks standing to assert a claim for injunctive relief because he has not alleged any real or immediate threat of injury or the likelihood of future or continuing harm. A plaintiff must meet three requirements to establish that she has standing to bring a lawsuit: (1) injury in fact, (2) a causal connection between the injury and the defendant's conduct, and (3) redressability. *Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1074 (7th Cir. 2013) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). "[T]o establish injury in fact when seeking prospective injunctive relief, a plaintiff must allege a 'real and immediate' threat of future violations of their rights . . . ." *Scherr*, 703 F.3d at 1074 (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)); *see also Kensington's Wine Auctioneers & Brokers, Inc. v. John Hart Fine Wine, Ltd.*, 392 Ill. App. 3d 1 (2009) ("To be eligible for injunctive relief under the Deceptive Practices Act, a plaintiff must show the defendant's conduct will likely cause it to suffer damages in the future.").

Defendant allegedly injured Plaintiff by using a label that actually deceived him. However, now that he is aware of the deception, it is unlikely Plaintiff will be misled again. *See Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 741 (7th Cir. 2014) ("Since [plaintiff] is now aware of [defendant's] sales practices, [plaintiff] is not likely to be

harmed by the practices in the future.”). Even if Plaintiff intends to purchase the Product again, which he has not specifically alleged, *see* Doc. 1, ¶ 92 (“Plaintiff intends to, seeks to, and will purchase the Product again when he can do so with the assurance the Product’s representations are consistent with its abilities, attributes and/or composition.”), he does not face an imminent threat of future harm. Merely purchasing the Product does not trigger Plaintiff’s injury. His injury lies in purchasing the Product under the influence of a deceptive label. There is no chance he will be misled again because he now knows a quick look at the ingredients label will reveal the Product’s true composition. Therefore, the complaint fails to allege a real and immediate threat of future violations of his rights. Accordingly, to the extent Plaintiff’s claims seek injunctive relief, Defendant’s Motion to Dismiss is **GRANTED**, and those claims are **DISMISSED**.

**B. Illinois Consumer Fraud Act**

Next, Defendant moves to dismiss Plaintiff’s consumer fraud claims for failure to state a claim. Plaintiff’s consumer fraud claims arise under the Illinois Consumer Fraud and Deceptive Practices Act (“ICFA”). The ICFA “protects consumers against fraud, unfair methods of competition, and other unfair and deceptive business practices.” *Vanzant v. Hill’s Pet Nutrition, Inc.*, 934 F.3d 730, 736 (7th Cir. 2019). Deceptive or unfair practices include any misrepresentation or the concealment, suppression or omission of any material fact.” 815 Ill. Comp. Stat. Ann. 505/2; *Vanzant*, 934 F.3d at 736.

To survive a motion to dismiss under the ICFA, Plaintiff must plausibly allege: “(1) a deceptive or unfair act or promise by the defendant; (2) the defendant’s intent that the plaintiff rely on the deceptive or unfair practice; and (3) the unfair or deceptive

practice occurred during a course of conduct involving trade or commerce." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 934 (7th Cir. 2010) (citing *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 417 (2002)). To show that an act was deceptive, a plaintiff must allege that a reasonable consumer would be deceived by the defendant's representations or omissions. *Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 476 (7th Cir. 2020). This standard "requires a probability that a significant portion of the general consuming public or of target consumers, acting reasonably in the circumstances, could be misled." *Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 973 (7th Cir. 2020) (quoting *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016)).

The reasonable consumer standard requires a "practical and fact-intensive approach to consumer behavior." *Bell*, 982 F.3d at 478. Thus, how reasonable consumers would interpret an ambiguous food label is typically a question of fact that should not be decided on the pleadings. *See id.* at 483. But "a court may dismiss the complaint if the challenged statement was not misleading as a matter of law." *Ibarrola v. Kind, LLC*, 83 F. Supp. 3d 751, 756 (N.D. Ill. 2015) (citing *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 940 (7th Cir. 2001)). *Bell*, supra, provides the necessary guidance. The issue presented in *Bell* was whether the phrase "100% Grated Parmesan Cheese" was deceptive in the sense that reasonable consumers could be misled to believe that the product contained only cheese. The Court determined that it has "no quarrel with defendants' ability to call their products "grated cheese." The problem lies in the "100%," especially since the pleadings provide reason to think that consumers understand "100% grated cheese" to mean that the cheese does not have additives." *Bell* at 481.

Here, Plaintiff alleges four misleading or deceptive statements: (1) that the term "Lite" indicates that the Product is low in sugar and calories, and (2) lower in sugar and calories than an unidentified comparable reference food; (3) that the use of the dual nutrition facts panel is inconsistent with research on healthy dietary practices and misrepresents that the Product meets the regulatory definition for a single-serve container; and (4) that the Product is alleged to have been made in the United States, although it is from Canada. Defendant's arguments concerning the "Lite" and "United States" statements are congruent, so the Court will address those statements first.

## ***I. "Lite" and "United States" Statements***

As to the "Lite" and "United States" statements, Defendant responds that these statements cannot plausibly mislead or deceive a reasonable consumer because the statements do not make a claim about the Product's sugar or calorie content, or the Product's origin. Defendant further argues that no reasonable consumer would be misled by the statements because of the other information contained on the label, i.e., the nutrition facts and the words "Product of Canada" (Doc. 14-1) (citing *Davis v. G.N. Mortg. Corp.*, 396 F.3d 869, 884 (7th Cir. 2005) ("the allegedly deceptive act must be looked upon in light of the totality of information made available to the plaintiff.")). Defendant argues that these truthful statements negate any alleged deception when read as a whole.

However, the Seventh Circuit instructs that consumer-protection laws "do not impose on average consumers an obligation to question the labels they see and to parse them as lawyers might for ambiguities, especially in the second usually spent picking a low-cost product." *Bell*, 982 F.3d at 476 (citing *Danone, US, LLC v. Chobani, LLC*, 362 F.

Supp. 3d 109, 123 (S.D.N.Y. 2019) ("[A] parent walking down the dairy aisle in a grocery store, possibly with a child or two in tow, is not likely to study with great diligence the contents of a complicated product package, searching for and making sense of fine-print disclosures … . Nor does the law expect this of the reasonable consumer.").

Further, as one district court has aptly reasoned, the fact that the FDA regulates and uses the term "light" or "lite" in the context of its nutrient content claims, "implies that consumers may rely on the use of such terminology, at least to some extent, when making decisions about what products to purchase." *Hadley v. Kellogg Sales Co.*, 273 F. Supp. 3d 1052, 1086 (N.D. Cal. 2017) (citing 21 C.F.R. § 101.56)); *Cruz v. Anheuser-Busch, LLC*, No. CV 14-09670 AB ASX, 2015 WL 3561536, at *8 (C.D. Cal. June 3, 2015), *aff'd sub nom. Cruz v. Anheuser-Busch Companies, LLC*, 682 F. App'x 583 (9th Cir. 2017) ("It is evident that a 'light' product signifies a lower calorie option which one would reasonably measure against the product's full calorie counterpart.").

Moreover, in other contexts, the Seventh Circuit has likened the term "light" to that of a subcategory of another product. *See, e.g., Henri's Food Prod. Co. v. Tasty Snacks, Inc.*, 817 F.2d 1303, 1306 (7th Cir. 1987) (likening "light beer" to a subcategory of beer that is of a quality that is "less filing with reduced calories"); *Miller Brewing Co. v. G. Heileman Brewing Co.*, 561 F.2d 75, 81 (7th Cir. 1977) (in the context of a trademark dispute, finding that the term "light", in reference to a "light beer", is a common descriptive word indicating that the product is "lighter in taste" or "less filing, and further noting that the word "light" is "also used by Pepsico, Inc. for 'Pepsi Light' as a soft drink described as having 'half the calories out.'"). While Defendant argues that these regulations only

apply to fat content (Doc. 14-1, p. 17), at this junction, the Court cannot conclude as a matter of law that no reasonable consumer would rely on the Product's "Lite" statement in concluding that the Product contains low sugar and calories, or lower sugar and calories than other products.

Defendant also argues that Plaintiff's claim fails because Plaintiff did not identify a comparative beverage to determine whether the Product's use of the term "lite" is a method of deception (Doc. 14-1, pp. 10-11) (citing *Cruz*, 2015 WL 3561536, at *8 (reasoning that even when a "light" product signifies a lower calorie option, plaintiffs failed to state a claim because they did not identify "the full calorie counterpart" of defendant's products for the court to "objectively determine whether the product's use of the term light is a method of deception."). Defendant acknowledges that Plaintiff generally references "soda" as a comparative product but argues that this generalized comparison is not enough to sufficiently evaluate Plaintiff's deceptive claim here. The Court disagrees.

First, unlike in *Cruz*, a portion of Plaintiff's deceptive claim is premised on Defendant's alleged failure to include a comparative beverage on the Product's label in accordance with FDA regulations (Doc. 1) (citing 21 C.F.R. 101.13(j)(1)(i)(B)-(ii)(A) ("For 'light' . . . claims, the reference food shall be similar food . . . and . . . shall be representative of the type of food that includes the product that bears the claim."). Whereas in *Cruz*, the Court referred to the FDA regulations only for illustrative purposes because the FDA does not regulate the alcoholic beverage industry or the malt beverages at issue in the case. *See Cruz* at *8, n.14. Further, the *Cruz* court found that the beverage's use of the

word "light" had nothing to do with the beverage being a "light" product but was a reference to how the beverage contained "some combination of a margarita and [Defendant's] Bud Light Lime [product]." *See Cruz* at *8. Thus, at this stage, the Court cannot say that as a matter of law, that Plaintiff's failure to identify a more specific comparable product requires dismissal where the generalized comparison to "soda" provides a sufficient comparison to evaluate the deceptive claim.

In sum, while the Product does not explicitly make a claim as to its sugar and calorie composition, the Court cannot say that as a matter of law that significant portion of reasonable consumers are not deceived by the "Lite" claim made by Defendant in its labeling. However, the statements referring to the Product's origin present a much closer case. As Defendant argues, it certainly appears less likely that a consumer would conclude that the combination of statements "American Company" and "Product of Canada" means that the Product was made in the United States. Nevertheless, "[w]hat matters here is how consumers behave –how they perceive advertising and how they make decisions." *Bell* at 481. And this Court cannot say at this stage, that as a matter of law that "a significant portion of the general consuming public or of target consumers, acting reasonably in the circumstances" are not deceived by the claim made by Defendant in its labeling of the product.

***II. Dual Nutrition Facts Panel***

The Court turns next to Defendant's arguments concerning its dual nutrition facts panel. Plaintiff alleges that the dual nutrition facts panel is inconsistent with research on health dietary practices and misrepresents that the Product is actually a single-serve

container. Defendant maintains that these complaints are preempted by the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 343-1(a)(4), barred under the Illinois Safe Harbor Doctrine, and because the regulations Plaintiff refers to do not govern calorie and sugar content claims (Doc. 14-1).

The FDCA delegates to the FDA the power to "promulgate regulations fixing and establishing for any food ... a reasonable definition and standard of identity, a reasonable standard of quality, or reasonable standards of fill of container." 21 U.S.C. § 341. These standards of identity determine what a food product must contain to be marketed under a certain name. They also often establish requirements for how the product must be made or sold." *Bell*, 982 F.3d at 486. 21 U.S.C. § 343(q) also governs the disclosure of nutrition information on a product label, including calorie and sugar content, and serving sizes, which are the amounts "customarily consumed and which is expressed in a common household measure that is appropriate to the food." *See* 21 U.S.C. § 343(q)(1)(A)(i); *see also* 21 C.F.R. § 101.9(b)(1) (nutrition labeling of food); 21 C.F.R. § 101.12(b) (defining "reference amounts customarily consumed").

Defendant maintains that these regulations require it to include nutrition information in terms of a 12-ounce serving size, while also allowing it to include a statement based upon the entire 20-ounce container (Doc. 14-1). Thus, Defendant argues that Plaintiff's claims are preempted by the FDCA. While the FDCA does not create a private right of action, and plaintiffs are entitled to seek relief pursuant to state-law causes of action, these state actions are "tightly circumscribed by the FDCA's express preemption of state-law theories that impose requirements 'not identical' to its own

requirements." *See Benson v. Fannie May Confections Brands, Inc.*, 944 F.3d 639, 645 (7th Cir. 2019) (citing *Turek v. Gen. Mills, Inc.*, 662 F.3d 423, 426 (7th Cir. 2011)); *see also* 21 U.S.C. § 343-1 (national uniform nutrition labeling).

Plaintiff does not object to Defendant's use of the dual column labeling generally and does not contest that the FDA permits such labeling (Doc. 19). Rather, Plaintiff claims the label is misleading because the Nutrition Facts should disclose that the Product qualifies as a single serving size. Thus, Plaintiff argues that its claims escape preemption because they are based on Defendant's failure to abide by the "identical requirements of federal and state law." (Doc. 19, p. 8) (citing *Turek*, 662 F.3d at 427; *Bausch v. Stryker Corp.*, 630 F.3d 546, 554 (7th Cir. 2010)).

The Court need not determine at this stage whether preemption bars Plaintiff's claims here because preemption "is an affirmative defense upon which the defendants bear the burden of proof." *Benson*, 944 F.3d at 645 (citing *Fifth Third Bank ex rel. Tr. Officer v. CSX Corp.*, 415 F.3d 741, 745 (7th Cir. 2005)); *see also*, *Luna Vanegas v. Signet Builders, Inc.*, 46 F.4th 636 (7th Cir. 2022) ("Rarely will the face of the complaint so clearly prove the opponent's affirmative defense that immediate dismissal, prior to the filing of an answer, will be proper."). Thus, unlike cases where "the plaintiff has pleaded herself out of court", the more appropriate way to address this affirmative defense would be by moving for judgment on the pleadings under Fed. R. Civ. P. 12(c). *Benson*, 944 F.3d at 645 (citing *Bausch*, 630 F.3d at 561; *Logan v. Wilkins*, 644 F.3d 577, 582–83 (7th Cir. 2011); *Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009)); *see also Luna Vanegas*, 46 F.4th 636 (A party seeking to dismiss a claim at the outset of a case based on an affirmative defense should

first raise the defense in its answer and then move for judgment on the pleadings under Rule 12(c)). As the Court has already found that Plaintiff's other claims survive dismissal, the difference between Rule 12(c) and 12(b)(6) should not be disregarded here, and the Court will not penalize Plaintiff for not anticipating Defendant's preemption defense in his complaint. *See Benson*, 944 F.3d at 645.

For these reasons, Defendant's motion to dismiss Plaintiff's consumer fraud claims is **DENIED**.

### C. Other Consumer Fraud Statutes

Plaintiff also raises claims on behalf of a multi-state class for violations of state consumer fraud acts in Alabama, Arkansas, Georgia, Indiana, Iowa, Louisiana, Michigan, Montana, Nebraska, Ohio, Oklahoma, Texas, Virginia, West Virginia (Doc. 1, p. 13). Defendant complains that Plaintiff has not sufficiently identified the relevant states or statutes at issue (Doc. 14-1, p. 20). However, the Court observes that all of the states referred to in Plaintiff's complaint have enacted consumer fraud statutes.[3] The Seventh Circuit has referred to these statutes as "Little-FTC Acts" which "broadly prohibit unfair business practices, including deceptive advertising." *Bell*, 982 F.3d at 474. Generally, these statutes "all require plaintiffs to prove that the relevant labels are likely to deceive reasonable consumers,' which 'requires a probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the

[3] *See, e.g.*, Ala. Code § 8-19-10(a); Ark. Code Ann. § 4-88-113(f); Ga. Code Ann. § 10-1-390; Ind. Code Ann § 24-5-0.5-2; Iowa Code § 714H.5; La. Stat. Ann. § 51:1409(A); Mich. Comp. Laws § 445.904(1)(a); Mont. Code Ann. § 30-14-133(1); Neb. Rev. Stat. Ann. § 59-1602; Ohio Rev. Code Ann. § 1345.01(A); Okla. Stat. tit. 15, § 752; Tex. Bus. & Com. Code Ann. § 17.41; Va. Code Ann. § 6.2-2025; W. Va. Code § 46A-6-106(a).

circumstances, could be misled.'" *See, e.g.*, *Bell*, 982 F.3d at 475–76 (quoting *Beardsall*, 953 F.3d at 972–73). The parties do not identify any meaningful differences between the applicable statutes. Therefore, these claims rise and fall together on the question of whether the Product's representations were likely to deceive reasonable consumers. *See Bell*, 982 F.3d at 475–76.

Having found Plaintiff's consumer fraud claims sufficient to survive dismissal, Defendant's motion to dismiss the claims under other consumer fraud statutes are also **DENIED**. However, the Court is aware that prudential concerns and potential Rule 23 issues may stand in the way of permitting Plaintiff to represent potential members of a class to which he himself does not belong or to maintain claims that are different from those of other potential members. *See generally Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 102 (1982).

**D. Breach of Contract**

Defendant argues that Plaintiff's breach of contract claim must fail because Plaintiff failed to plead contractual privity. Indeed, Plaintiff alleged that he purchased the Product from third parties, specifically at BP Stations, and not from Defendant directly. Both parties devote little argument to this count, such that their contentions are largely underdeveloped. Nevertheless, to state a claim for breach of contract under Illinois law, a plaintiff must allege: "(1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) resultant damages." *Sevugan v. Direct Energy Servs., LLC*, 931 F.3d 610, 614 (7th Cir. 2019). Plaintiff's bare-boned allegations do not sufficiently allege these elements. Thus,

Defendant's Motion as this claim is **GRANTED**, and Plaintiff's claim for breach of contract is **DISMISSED, without prejudice**.

### E. Breach of Express and Implied Warranties and the Magnuson Moss Warranty Act

Plaintiff brings claims for breach of express warranty and breach of implied warranty of merchantability. Defendant contends that these claims must be dismissed because Plaintiff failed to meet pre-suit notice requirements to bring breach of warranty claims as required by 810 Ill. Comp. Stat. Ann. 5/2-607(3)(a). Under section 2-607, "the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of the breach or be barred from *any* remedy." *Id.* (emphasis added); *see also* *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482 (1996) (Plaintiff must "directly notify the seller of the troublesome nature of the transaction or be barred from recovering for a breach of warranty.").

The Complaint alleges that Plaintiff "recently became aware of Defendant's breach of the Product's warranties" and "provided or will provide notice to Defendant, its agents, representatives, retailers, and their employees." (Doc. 1, ¶¶ 114-115). Although the issue of notice is normally a question of fact to be decided by the jury, where a plaintiff does not allege legally sufficient notice in the complaint, the Court may rule on the issue at the motion to dismiss stage. *O'Connor v. Ford Motor Co.*, 477 F. Supp. 3d 705, 717 (N.D. Ill. 2020). Here, Plaintiff's Complaint does not provide sufficient allegations to support his argument that he complied with the statutory notice requirement by filing this suit or shortly thereafter (*See* Doc. 17, p. 11). Plaintiff is required to give notice *pre*-suit, and this

notice must not be generalized *See id.* (emphasis added) (citing *Connick*, 174 Ill. 2d 482 (While "it is unnecessary to list specific claims of breach of warranty in giving notice under section 2-607, it is essential that the seller be notified that *this particular transaction* is 'troublesome and must be watched.'") (emphasis in original). Because Plaintiff does not allege that he gave direct pre-suit notice, Plaintiff's breach of warranty claims must fail.

Plaintiff also claims that Defendant violated the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2310(d)(1), which creates a federal cause of action for breach of warranty. However, because Plaintiff's state law warranty claims fail, his MMWA claim also fails. *See, e.g.*, *Oettle v. Walmart, Inc.*, No. 3:20-CV-455-DWD, 2022 WL 3584944, at *2 (S.D. Ill. Aug. 22, 2022); *Cerretti v. Whole Foods Mkt. Grp., Inc.*, No. 21 CV 5516, 2022 WL 1062793 (N.D. Ill. Apr. 8, 2022), at *5 ("If plaintiff's notice is insufficient under Illinois law, it also fails under federal law, because the Magnuson-Moss Warranty Act incorporates state-law notice requirements.") (collecting cases). Accordingly, Defendant's Motion as to the warranty claims is **GRANTED**, and Plaintiff's claims for breach of warranties are **DISMISSED, without prejudice**.

**F. Common law claims for negligent misrepresentation and fraud**

Defendant argues that Plaintiff's common law claims for negligent misrepresentation and fraud fail because Plaintiff has only alleged economic losses, has failed to allege a special relationship, and cannot satisfy the heightened pleading requirements of Fed. R. Civ. P. 9(b). Under Illinois law, the economic loss rule bars plaintiffs from recovering solely economic losses for negligent misrepresentation claims.

*See Moorman Mfg. Co. v. Nat'l Tank Co.*, 91 Ill. 2d 69, 91 (1982). Plaintiff has not alleged non-economic losses, and thus the economic loss rule does bar his recovery for negligent misrepresentation. Further, the "special knowledge and experience" exception does not apply here to create a duty here because Defendant, as a manufacturer of goods, is "not in the business of supplying information." *See Hamidani v. Bimbo Bakehouse LLC*, No. 22-CV-01026, 2023 WL 167513, at *3 (N.D. Ill. Jan. 12, 2023) (citing *O'Connor*, 477 F. Supp. 3d at 723)). "Rather, the information supplied to consumers is ancillary to the sale of its product. *See Id.* (citing *First Midwest Bank, N.A. v. Stewart Title Guar. Co.*, 218 Ill. 2d 326 (2006)).

To state a claim for common law fraud, Plaintiff must allege: "(1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement." *Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 841 (7th Cir. 2007) (quoting *Connick*, 174 Ill. 2d 482). Fraud claims are further subject to the heightened pleading standard under Fed. R. Civ. P. 9(b). Generally, this standard requires Plaintiff to plead the who, what, when, where, and how of the fraud. *Camasta*, 761 F.3d at 737.

Plaintiff has satisfied its heightened pleading burden under Rule 9(b) as to his consumer fraud claims. Plaintiff's complaint adequately alleges the who, what, when, where, and how as to the alleged misleading or deceptive statements: the <u>who</u>: Defendant; the <u>what</u>: "Lite" labeling on the Product; the <u>when</u> and <u>where</u>: Plaintiff's purchases and reading of the Label made between January 2021 and January 2022 at two

BP Stations in Caseyville, Illinois; and how: by representing that the Product was low in sugar and calories or lower in sugar and calories than other beverages. However, Plaintiff has not alleged the necessary elements to establish common law fraud. Specifically, Plaintiff has failed to plausibly allege that the Product contained a false statement of material fact. Rather, as previously discussed, his claim stems from his interpretation of the Product's label which he maintains was misleading and deceptive, but not overtly false. Further, the Complaint does not allege anything concerning Defendant's knowledge.

For these reasons, Defendant's Motion as to Plaintiff's common law fraud and negligent misrepresentation counts are **GRANTED**, and those claims are **DISMISSED, without prejudice**.

**G. Unjust Enrichment**

To state a claim for unjust enrichment under Illinois law, "a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *Jett v. Warrantech Corp.*, 436 F. Supp. 3d 1170, 1181 (S.D. Ill. 2020). "When a claim of unjust enrichment arises out of the same conduct alleged in another claim, the unjust enrichment claim stands or falls with the other claim." *Id.* (citing *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011)). Here, Plaintiff's theory of unjust enrichment arises out of the same conduct as his ICFA claims. As such, the claim stands or falls with the ICFA claim. Based on this Court's determination that Plaintiff has

stated a colorable ICFA claim, the related unjust enrichment claim is also sufficient to withstand dismissal. Defendant's Motion is **DENIED** as to that count.

## Conclusion

For these reasons, Defendant's Motion to Dismiss (Doc. 14) is **GRANTED, in part, and DENIED, in part**. The Motion is **GRANTED** as to Plaintiff's claims for breach of contract, breach of warranties, negligent misrepresentation, common law fraud, and injunctive relief. Accordingly, those claims are **DISMISSED**. The Motion is **DENIED** as to Plaintiff's consumer fraud and unjust enrichment claims.

**SO ORDERED.**

Dated: January 30, 2023

DAVID W. DUGAN
United States District Judge