## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| KENNETH CRAWFORD,<br>individually and on behalf of<br>all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>ARIZONA BEVERAGES USA LLC,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No.  22-cv-00220<br><br>Judge David W. Dugan |

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
## AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT OF MOTION

Defendant, Arizona Beverages USA LLC ("Defendant"), pursuant to Federal Rule of Civil Procedure 56 and Local Civil Rule 7.1(c), will move this Court, before the Honorable David W. Dugan, at the Southern District of Illinois Courthouse, 750 Missouri Ave, East Saint Louis, IL 62201, on a date and time that the Court will determine, for summary judgment in its favor against all the claims filed by plaintiff, Kenneth Crawford ("Plaintiff").

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................ iii

INTRODUCTORY STATEMENT TO MEMORANDUM OF LAW ............................................. 1

- The Court Should Enter Summary Judgment Because Plaintiff Cannot Prove Causation, Deception and/or Damages ............................................ 1

- The Unjust Enrichment Claim Cannot Proceed ......................................................... 2

- Summary Judgment is Proper with Respect to Claims Brought Under Other State Consumer Fraud Laws ................................................................. 2

PROCEDURAL HISTORY ................................................................................... 2

DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS ................................. 3

LEGAL ARGUMENT ....................................................................................... 8

I.    Standard .......................................................................................... 8

II.   This Court Should Enter Summary Judgment on the ICFA Claim Because Plaintiff Does Not Know Whether He Ever Purchased the Product With the Label Claimed to be Misleading ........................................... 9

III.  Summary Judgment is Warranted on the ICFA Claim Because Plaintiff Bought Defendant's Product After Becoming Aware of its Sugar Content and After Coming to the Belief He Was Deceived ....................................................................................... 13

IV.   This Court Should Enter Summary Judgment on the ICFA Claim Because, With Respect to the 20-Ounce Container Plaintiff Purchased, Plaintiff Admits Buying That Product Only When the 23-Ounce Product Was Not Available ................................................... 16

V.    Defendant is Entitled to Summary Judgment on the ICFA Claim Because Plaintiff Testified That the Product Was Fairly Priced and Provided Great Value ........................................................................ 18

VI.   A Judgment Dismissing the ICFA Claim Authorizes Dismissal of the Unjust Enrichment Claim ................................................................. 19

i

VII.    No Facts Exist to Support a Claim Under Other State Consumer Fraud Laws Due to the Presumption Against Extraterritorial Application ........................................................................................... 19

CONCLUSION ................................................................................................................. 20

06/26/2023 SL1 1936041v1 115260.00007

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986) ...........................................................8

*Celotex Corp. v. Catrett*,
    477 U.S. 317, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986) ...........................................................8

*Cleary v. Phillip Morris, Inc.*,
    656 F.3d 511 (7th Cir. 2011) ...............................................................................................19

*Estate of Suskovich v. Anthem Health Plans of Va., Inc.*,
    553 F.3d 559 (7th Cir. 2009) .................................................................................................8

*Healy v. Beer Inst., Inc.*,
    491 U.S. 324 (1989) ............................................................................................................20

*Korte v. Pinnacle Foods Grp., LLC*,
    2018 WL 1508855 (S.D. Ill. Mar. 27, 2018) ......................................................................18

*Kremers v. Coca-Cola Co.*,
    712 F. Supp. 2d 759 (S.D. Ill. 2010) ................................................................................9,13

*Nat'l Solid Wastes Mgmt. Ass'n v. Meyer*,
    165 F.3d 1151 (7th Cir. 1999) .............................................................................................20

*Oshana v. Coca–Cola Co.*,
    472 F.3d 506 (7th Cir. 2006) .................................................................................................9

*Outlaw v. Newkirk*,
    259 F. 3d 833 (7th Cir. 2001) ...............................................................................................8

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreens Co.*,
    631 F.3d 436 (7th Cir. 2011) ...............................................................................................19

*Ryan v. Wersi Elect. GmbH & Co.*,
    59 F.3d 52 (7th Cir. 1995) ...................................................................................................13

*Schrott v. Bristol-Myers-Squibb Co.*,
    403 F.3d 940 (7th Cir. 2005) .................................................................................................9

*Scott v. Harris*,
    550 U.S. 372, 380,127 S. Ct. 1769, 167 L.Ed.2d 686 (2007) .................................................8

*Siegel v. Shell Oil Co.*,
    656 F. Supp. 2d 825 (N.D. Ill. 2009) .......................................................................10,15,16,19

*Stemm v. Tootsie Roll Indus., Inc.*,
    374 F. Supp. 3d 734 (N.D. Ill. 2019) ....................................................................................18

*Toulon v. Cont'l Cas. Co.*,
    877 F.3d 725 (7th Cir. 2017) ..............................................................................................19

**State Cases**

*Avery v. State Farm Mut. Auto. Ins. Co.*,
    216 Ill.2d 100, 296 Ill. Dec. 448, 835 N.E.2d 801 (2005) .......................................................9

*Connick v. Suzuki Motor Co., Ltd.*,
    174 Ill. 2d 462 (1996) ........................................................................................................13

*De Bouse v. Bayer*,
    235 Ill.2d 544 (2009) ............................................................................................................9

*Robinson v. Toyota Motor Credit Corp.*,
    201 Ill. 2d 403 (2002) ..........................................................................................................9

*Zekman v. Direct Am. Marketers*,
    182 Ill.2d 359 (1998) .....................................................................................................10,13

**Federal Statutes**

Magnuson-Moss Warranty Act........................................................................................................2

**State Statutes**

Illinois Consumer Fraud and Deceptive Practices Act ...........................................................*passim*

**Rules**

Federal Rule of Civil Procedure 56 .........................................................................................1,20

Local Civil Rule 7.1(c) ...............................................................................................................1

06/26/2023 SL1 1936041v1 115260.00007

## INTRODUCTORY STATEMENT TO MEMORANDUM OF LAW

- **The Court Should Enter Summary Judgment Because Plaintiff Cannot Prove Causation, Deception and/or Damages**

Plaintiff's claims concern the label statements made on Defendant's 20-ounce bottle of Arnold Palmer Lite Half Iced Tea & Half Lemonade product (hereafter, "20-Ounce Product"), that are alleged to be deceptive and/or misleading under the Illinois Consumer Fraud and Deceptive Practices Act ("ICFA"). However, Plaintiff cannot prove causation, deception and/or damages under the ICFA for four reasons. First, there is no evidence that Plaintiff even purchased the 20-Ounce Product with the label statements claimed actionable. When shown the label of the 20-Ounce Product that contains the alleged deceptive statements, Plaintiff first testified that he bought the product with that label but then corrected that testimony by admitting that he did not know whether he ever bought a product having that label.

Second, Plaintiff continued to purchase Defendant's Arnold Palmer Lite Half Iced Tea & Half Lemonade product (referenced herein, generally, as "Arnold Palmer Lite Product") even after forming the belief that he was deceived. Plaintiff's testimony about continued purchases is fatal to the ICFA claim under Seventh Circuit case law. Plaintiff considered the term "Lite" to mean that the Arnold Palmer Lite Product was a healthier drink having less calories and sugar than other products. Nonetheless, Plaintiff admits that, after learning of the sugar content of the Arnold Palmer Lite Product in 2018 and/or 2019, he bought the product. Plaintiff formed the belief that he was deceived by Defendant around February 2020. Nevertheless, Plaintiff continued to purchase the Arnold Palmer Lite Product between January 2021 and January 2022. Plaintiff cannot demonstrate that any statement on the label was material or caused damages given this testimony.

Third, Plaintiff preferred purchasing the 23 ounce cans of the Arnold Palmer Lite Product and admitted, when shown a 20 ounce container, that he would only purchase the product in that container when cans were not available.

Last, no damages can be proven because Plaintiff testified that: (1) the Arnold Palmer Lite Product had great value; (2) the product probably had the best, if not one of the best, values offered for an iced tea; and (3) the product was sold at a fair price.

- **The Unjust Enrichment Claim Cannot Proceed**

No stand-alone claim exists for unjust enrichment under Illinois law. Accordingly, if the Court enters judgment in Defendant's favor on the ICFA claim, no legal grounds remain to claim unjust enrichment.

- **Summary Judgment is Proper with Respect to Claims Brought Under Other State Consumer Fraud Laws**

Plaintiff sues under other state consumer protection laws, other than ICFA. However, Plaintiff only made purchases in Missouri and Illinois. Based upon the presumption against extraterritorial application, no facts exist to support claims based upon these other states' laws.

## PROCEDURAL HISTORY

Plaintiff's Complaint was filed on February 6, 2022. (ECF No. 1). On January 30, 2023 ("January 30 Order"), this Court granted, in part, and denied, in part, Defendant's motion to dismiss. (ECF No. 26). The Court dismissed the following claims: (1) breach of contract; (2) breaches of express warranty, implied warranty of merchantability and under the Magnuson-Moss Warranty Act; (3) negligent misrepresentation; (4) common law fraud; and (5) for injunctive relief. (*Id.*, p. 20). The only remaining claims are for consumer fraud under the ICFA, claims under other consumer fraud statutes of other states, and unjust enrichment. (*Id.*).

In addressing Plaintiff's claims in the January 30 Order, this Court stated:

Plaintiff claims the label contains at least four false or misleading representations.   The first two representations concern Defendant's use of the word "Lite."   Plaintiff claims the use of the word "Lite" is misleading because the reasonable consumer would understand the term to mean that the Product is low in both sugar and calories, or lower in sugar and calories than other products.   However, Plaintiff alleges that the Product is neither low in sugar or calories, but instead would qualify as a "high" sugar product under comparable FDA regulations and contains a similar number of high calories to that of a can of soda… Plaintiff also complains that the label fails to identify a "reference food" so that consumers can compare the Product's "lite" claim to that of another representative product with higher nutrient values in accordance with FDA regulations…

Next, Plaintiff claims that the Product's use of a "dual column" nutrition facts panel to show a serving size of 12 ounces is misleading because the entire 20-ounce bottle meets the regulatory definition for a single-serve container…   Plaintiff argues that the dual column format of the label is inconsistent with the "information required to maintain healthy dietary practices," and thus misleading, because it implies that a consumer will consume less than the entire container when they would instead consume the entire bottle.   Finally, Plaintiff contends that the Product falsely claims to be made in the United States because the label depicts a map of the United States covered in the image of the American Flag and surrounded by the words "An American Company – Family Owned and Operated."…However, elsewhere on the label—just below the barcode—the label states that the Product is a "Product of Canada". [*Id.* p. 2-3].

Defendant filed an answer to the Complaint on February 29, 2023. (ECF No. 29). Plaintiff filed a motion for class certification on June 13, 2023. (ECF No. 32). Defendant's opposition to the motion for class certification is due August 14, 2023. (ECF No. 31).

### **DEFENDANT'S STATEMENT OF UNDISPUTED MATERIAL FACTS**

1.      This action concerns the label on the 20-Ounce Product. (Complaint, ¶¶ 1, 7, 40, 42, 44, and 51).

2.      During his deposition, Plaintiff was shown his answer to an interrogatory wherein, in response to the question to identify details of purchases, Plaintiff answered that he purchased "a

large sized version of the Product weekly . . . between February 6, 2019 and February 6, 2022." (Declaration of Robert P. Donovan, "Donovan Dec.", Ex. A, transcript of Plaintiff's deposition, T. 58:9-T. 59:23; and Ex. B, interrogatory answer No. 2).

3.     When asked to identify what he meant by a "large sized version," Plaintiff testified that "a large can" was the product he was referencing in that interrogatory answer (hereafter, "the 23-Ounce Product"). (*Id.*, Ex. A, T. 60:5-12; T. 65:18-23; and Ex. B, interrogatory answer no. 2).

4.     When stating a large sized version of the product, Plaintiff was referencing the cans only. (*Id.*, Ex. A, T. 64:18-23).

5.     Plaintiff identified a 23-ounce can of the Arnold Palmer Lite Product ("23-Ounce Product") as the large sized version of the product he was referencing in response to interrogatory number 2. (*Id.*, Ex. A, T. 67:4-T. 68:3; and Ex. C).

6.     Plaintiff preferred purchasing the cans of the 23-Ounce Product because "[t]hey were larger" and provided a better value. (*Id.*, Ex. A, T. 63:16-21).

7.     Plaintiff admitted that the Arnold Palmer Lite Product provided great value. (Id., Ex. A, T. 86:4-17).

8.     Other than the cans and the gallon containers, Plaintiff "sometimes" purchased "the smaller bottle." (*Id.*, Ex. A, T. 62:3-10).

9.     Plaintiff is not sure of the size of the Arnold Palmer Lite Product in the smaller bottle. (Id., Ex. A, T. 62:11-13).

10.     The smaller bottle was plastic. (*Id.*, Ex. A, T. 62:14-15).

11.     Plaintiff does not know how many times he bought the Arnold Palmer Lite Product in the smaller plastic bottle. (*Id.*, Ex. A, T. 62:11-20).

12.     Plaintiff first started purchasing Arnold Palmer Lite Product in the 23-ounce can. (*Id.*, Ex. A, T. 76:9-12).

13.     When shown a container of the 20-Ounce Product, having the golf ball shape depicted in the Complaint, and asked whether he ever purchased a product in this container, Plaintiff responded "No." (*Id.*, Ex. A, T.83:2-4; and Ex. D).

14.     When shown the label of the 20-Ounce Product, bearing the label statements claimed to be deceptive, Plaintiff first stated that he bought the Arnold Palmer Lite Product with that label but then corrected that testimony stating that he did not know whether he ever purchased a product with that label. (*Id.*, Ex. A, T. 93:22 – T. 94:24; T. 96:13-T. 97:20; and Ex. E).

15.     When presented with another container of the 20-Ounce Product, Plaintiff stated that he would make purchases of that container "only if the cans weren't available." (*Id.*, Ex. A, T. 98:17-21; T. 99:20-100:2; and Ex. F).

16.     Plaintiff does not know when he made the purchases of Arnold Palmer Lite Product in that 20 ounce container. (*Id.*, Ex. A, T. 98:17-99:6; and Ex. F).

17.     Plaintiff does not know how much money he expended for purchases of the Arnold Palmer Lite Product in that 20-ounce container. (*Id.*, Ex. A, T. 100:3-5; and Ex. F).

18.     Plaintiff testified as follows with regard to that 20-ounce container:

> Q.  Would it be fair to say that the reason that you bought or a determinative factor for the reason you bought P-12 [container of 20-Ounce Product] is because the cans were not available?
>
> A.  That's correct. [*Id.*, Ex. A, T. 100:6-10, and Ex. F].

19.     When asked what he thought was misleading about the label on the Arnold Palmer Lite Product, Plaintiff stated that the reference to "lite" gives "false hope that it has--that it's a healthier product." (*Id.*, Ex. A, T. 74:11-18).

20.     In response to the question as to whether there was any other reason why he thought the label was misleading, Plaintiff replied, "[n]o.  Just pretty much being that it's lite." (*Id.*, Ex. A, T. 74:19-20).

21.     Plaintiff did not testify that the dual column nutrition format, the serving size statements, the lack of an identified reference food or the label statement "an American Company-Family Owned and Operated" were deceptive or were reasons for his purchases. (*Id.*, Ex. A, T. 74:11-20; T. 76:9-T. 77:2).

22.     Plaintiff stated that the Arnold Palmer Lite Product "gave me the idea that it was…a healthier alternative." (*Id.*, Ex. A, T. 77:8-16).

23.     By "healthier," Plaintiff meant "[t]hat it wouldn't have as many calories." (*Id.*, Ex. A, T. 77:17-22).

24.     When asked how much lower in calories was being sought, compared to products not labeled lite, Plaintiff stated:

> "…it's not so much that I was looking for, you know, to go lower or looking for any number in specific, just that I wanted it to be a healthier drink, not have as much sugar.  Even when I…would get it from restaurants I would ask for Arnold Palmer unsweet tea with…whatever lite lemonade or if they have unsweetened lemonade or whatever they would have." (*Id.*, Ex. A, T. 81:18-82:5).

25.     In response to the question of what Plaintiff meant by "as much sugar," Plaintiff stated that he wanted less calories than the caloric content of sweet tea and sweetened lemonade. (*Id.*, Ex. A, T. 82:14-19).

26.     Plaintiff did not know how much less calories were being sought. (*Id.*, Ex. A, T. 82:20-23).

27.     Plaintiff became aware of the sugar and calorie content of the Arnold Palmer Lite Product in or around 2018 or 2019. (*Id.*, Ex. A, T. 83:8-84:16).

28.     Plaintiff became aware of the sugar and calorie content of the Arnold Palmer Lite Product by looking at the label.  (*Id.*, Ex. A, T. 84:5-14).

29.     When asked whether he continued to purchase the Arnold Palmer Lite Product after becoming aware of the sugar content, Plaintiff testified "I did, but, of course, you know, it was the healthier choice outside of water." (*Id.*, Ex. A, T. 84:17-21).

30.     Plaintiff first came to believe he was deceived by Defendant around February 2020 (*Id.*, Ex. A, T. 91:9-22, and Ex. B, interrogatory answer No. 16).

31.     Plaintiff bought the Arnold Palmer Lite Product in 2020. (*Id.*, Ex. A, T. 73:13-15).

32.     Plaintiff purchased the Arnold Palmer Lite Product between January 2021 and January 2022. (*Id.*, Ex. A, T. 93:7-10; Complaint, ¶73).

33.     In addition to the lite label, the additional reasons Plaintiff purchased the Arnold Palmer Lite Product included taste, value, quenching thirst, and brand familiarity.  (*Id.*, Ex. A, T. 87:4-21; T. 91:2-8).

34.     Plaintiff considered the Arnold Palmer Lite Product to have great value. (Donovan Dec., Ex. A, T. 86:15-21).

35.     Plaintiff agreed that the Arnold Palmer Lite Product probably has the best, if not one of the best, values offered for an iced tea. (*Id.,* Ex. A, T. 86:18-21).

36.     In response to the question whether Plaintiff believed that he paid more or less for the Arnold Palmer Lite Product due to the "lite" label, Plaintiff testified, "[n]o.  I think it was a fair price." (*Id.*, Ex. A, T. 106:16-20).

37.     When asked whether Plaintiff has made a purchase of the Arnold Palmer Lite Product in a state other than Illinois and Missouri, Plaintiff testified "I don't think so." (*Id.*, Ex. A, T. 34:19-21).

## LEGAL ARGUMENT

### I.   Standard

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Estate of Suskovich v. Anthem Health Plans of Va., Inc.,* 553 F.3d 559, 563 (7th Cir. 2009) (quoting Fed. R. Civ. P 56(c)).  A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).  In determining summary judgment motions, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris,* 550 U.S. 372, 380,127 S. Ct. 1769, 1776, 167 L.Ed.2d 686 (2007).  The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S. Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

To defeat a motion for summary judgment, a plaintiff must show concrete evidence documenting a genuine issue of fact, which is material in the sense that it is outcome determinative. *Outlaw v. Newkirk*, 259 F. 3d 833, 837 (7th Cir. 2001).  A plaintiff must show, not only there is a factual dispute, but also that there is sufficient evidence to enable a jury to render a verdict in plaintiff's favor. *Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986).  "Inferences and opinions must be grounded on more than flights of fancy, speculations, hunches, intuitions or rumors…." *Rand v. CF Industries, Inc.*, 42 F. 3d 1139, 1146 (7th Cir. 1994).

II.     **This Court Should Enter Summary Judgment on the ICFA Claim Because Plaintiff Does Not Know Whether He Ever Purchased the Product With the Label Claimed to be Misleading**

The purpose of ICFA is to regulate, remediate, and protect consumers against fraud, as well as against unfair and deceptive business practices. *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 416–17 (2002).  As observed in *Kremers v. Coca-Cola Co.*, 712 F. Supp. 2d 759, 768 (S.D. Ill. 2010), to establish a prima facie case in a private civil action for deceptive trade practices under Section 2 of ICFA:

> "a plaintiff must establish:  (1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to the plaintiff (5) proximately caused by the deception."  [quoting *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill.2d 100, 296 Ill. Dec. 448, 835 N.E.2d 801, 850 (2005) (citing *Oliveira v. Amoco Oil Co.*, 201 Ill.2d 134, 267 (2002)].

A plaintiff must show a causal link between the defendant's conduct and damages.  *See Schrott v. Bristol-Myers-Squibb Co.*, 403 F.3d 940, 945 (7th Cir. 2005).  "In other words, a damages claim under the ICFA requires that the plaintiff was deceived in some manner and damaged by the deception." *Oshana v. Coca–Cola Co.*, 472 F.3d 506, 513–14 (7th Cir. 2006) (citations omitted).  To maintain an action under the IFCA, the plaintiff must actually be deceived by a statement or omission made by the defendant. *See De Bouse v. Bayer*, 235 Ill.2d 544, 554 (2009) ("[i]f a consumer has neither seen nor heard any such statement, then she cannot have relied on the statement and, consequently, cannot prove proximate cause"); *see also Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill.2d 100, 200 (2005) ("it is not possible for a plaintiff to establish proximate causation unless the plaintiff can show that he or she was, 'in some manner, deceived' by the misrepresentation") (citing and quoting *Oliveira*, 201 Ill.2d at 155).

Under the ICFA, a plaintiff cannot be misled by alleged misrepresentations that they never saw. *See Zekman v. Direct Am. Marketers*, 182 Ill.2d 359, 375 (1998) (plaintiff could not be misled by phone bills he did not see); *see also Siegel v. Shell Oil Co.,* 656 F. Supp. 2d 825, 832–33 (N.D. Ill. 2009)(affirmed, 612 F.3d 932, 937 (7th Cir. 2010) (finding that a consumer could not maintain an ICFA claim for deceptive trade practices based on alleged misrepresentations made by oil companies regarding inflated gasoline prices where the consumer admitted that he did not believe the companies' advertising and other statements that purportedly justified the prices and that, in fact, he thought such statements were self-serving)).

During his deposition, Plaintiff was shown the following label:





[*Id.*, Ex. A, T. 93:20-24; and Ex. E].

The above label of the 20-Ounce Product contains the statements claimed actionable (i.e., the "Lite" statement, the dual column format stating calories, sugar and serving sizes and the reference to an "American Company – Family Owned & Operated"). (*Id.;* Complaint, ¶¶ 7, 19,

20, 44, 49-51).  That label, shown to the witness, is depicted in the January 30 Order.  (Donovan

Dec.  Ex. E and ECF No. 26, p. 2).

Plaintiff first stated that he bought the Arnold Palmer Lite Product with that label but then

corrected that testimony admitting that he did not know whether he ever purchased a product with

that label.  (Id., Ex. A, T. 93:22-T.94:24; T. 96:13-97:20; and Ex. E).  Given the import of this

testimony, the following sets forth the questions and answers concerning this label:

> Q. (By Mr. Donovan)  I'm going to show you a document marked
> P-11, sir, and ask you if you've ever purchased a product bearing
> that label?
>
> MR. SHEEHAN:  Thank you.
>
> A.  Yes.
>
> Q.      When?
>
> A.      Multiple times on multiple occasions.
>
> Q.      How many times?
>
> A.      I am not sure.
>
> Q.      When you say you're not sure, do you know?
>
> A.      It's a drink that I've had quite a bit, once or twice a week
> or even – yeah, probably about twice a week or so so I can't recall
> it.
>
> Q.      Can you tell me how many times you purchased the
> product bearing the label on P-11?
>
> A.      At least once a week.
>
> Q.      For what time period?
>
> A.      For a few years.  All the way up to, I guess, about 2020.  I
> can't tell you how far back.
>
> Q.      Up until when 2020?

A.      Well, actually it was between 19 – no.  Maybe it wasn't 2020.  '21 was the last purchase.  That was a traumatic period for me so I try not to remember a lot of things during that time.

Q.      Traumatic in what way, sir?

A.      A lot of personal things happened in my life during that time.

[*Id.*, Ex. A, T. 93:22-T. 94:24; and Ex. E].

            ***

Q.      So we got on this tract with me asking you about P-11 and you said you stopped purchasing it in 2020.  And I asked you when in 2020, you said I'm not sure, maybe it's 2021.  So when did you start purchasing a product labeled like P-11?

A.      When did I start?  Honestly I don't remember.  I've been drinking Arizona for a long time so I don't recall.

Q.      Okay.  And how much money have you expended on the product depicted in P-11?

A.      So for a can or some – well, the can is labeled 99 cents, the smaller bottle is labeled $1.00.  The larger jug that I've purchased, so there's no labels, I don't recall what I paid for those.

Q.      Okay.

A.      And it wasn't as often in purchasing the jug as much as the can.

Q.      And are you saying that you purchased P-11, the 20 ounce – it's 20 ounces, right?

A.      Yes.

Q.      **Are you saying you purchased the 20 ounce once a week or you purchased the can once a week?**

A.      **So I purchased the can at least once a week.**

Q.      **So that's 20 ounces on P-11, right?**

A.      **Yes.**

Q.      **Did you ever purchase a product bearing that label?**

A.      When you break it down to the ounces I cannot confirm that.

Q.      So do you know?

A.      No.

[*Id.*, Ex. A, T. 96:13-T. 97:20 (emphasis added); and Ex. E].

Plaintiff's failure to know whether he purchased the 20-Ounce Product, that has the label statements claimed to be misleading, is fatal to his ICFA claim. *See Kremers*, 712 F. Supp. 2d at 770 (holding that the plaintiff never saw the original formula, and thus could not rely on it nor be deceived); *see also Zekman,* 182 Ill.2d at 375. Plaintiff could not have been misled by a label on the 20 Ounce Product that he never saw. Because Plaintiff cannot prove that the label statements at issue caused damage, Defendant is entitled to summary judgment as to the ICFA claim.

### III.   Summary Judgment is Warranted on the ICFA Claim Because Plaintiff Bought Defendant's Product After Becoming Aware of its Sugar Content and After Coming to the Belief He Was Deceived

"The Illinois Consumer Fraud Act prohibits the 'misrepresentation or the concealment, suppression or omission of any *material* fact.'" *Ryan v. Wersi Elect. GmbH & Co.*, 59 F.3d 52, 54 (7th Cir. 1995) (quoting 815 ILCS 505/2 (emphasis added in *Ryan v. Wersi Elect.*)). "To be material under Illinois law, the misrepresented fact must be essential to the transaction between the parties." *Id.* (citing *Mack v. Plaza Dewitt Ltd. Partnership,* 137 Ill.App.3d 343, 92 Ill. Dec. 169, 175, 484 N.E.2d 900, 906 (1985); *see also Connick v. Suzuki Motor Co., Ltd.*, 174 Ill. 2d 462, 504 (1996). A fact is material if "a buyer would have acted differently knowing the information, or if it concerned the type of information upon which a buyer would be expected to rely in making a decision whether to purchase." *Id.* at 505; *see also Ryan v. Wersi Elect.,* 59 F.3d at 54 (affirming summary judgment for failure to prove the omitted fact was essential to the transaction).

Plaintiff believes the reference to "lite" was misleading because it gives "false hope...that it's a healthier product." (Donovan Dec., Ex. A, T. 74:11-18).  In response to whether there was any other reason why he thought the label was misleading, Plaintiff replied, "No.  Just pretty much being that it's lite." (*Id.*, Ex. A, T. 74:19-20).  The Arnold Palmer Lite Product "gave [Plaintiff] the idea that it was...a healthier alternative." (*Id.*, Ex. A, T. 77:8-16).  By "healthier," Plaintiff means "[t]hat it wouldn't have as many calories." (*Id.*, Ex. A, T. 77:17-22).  In terms of the amount of lower calories being sought, compared to products not labeled lite, Plaintiff was not seeking any specific amount, just a healthier drink, not having as much sugar.  (*Id.*, Ex. A, T. 81:18-82:5).  When asked what he meant by as "as much sugar," Plaintiff stated that he wanted less calories than the caloric content of sweet tea and sweetened lemonade. (*Id.*, Ex. A, T. 82:14-19).  However, he did not know how much less calories he was seeking.  (*Id.*, Ex. A, T. 82:20-23).

Significantly, Plaintiff testified that he first became aware of the sugar and calorie content of the Arnold Palmer Lite Product in or around 2018 or 2019. (*Id.*, Ex. A, T. 83:8-84:16).  He became aware of this information by looking at the label. (*Id.*, Ex. A, T. 84:8-14).  When asked whether he continued to purchase the Arnold Palmer Lite Product after becoming aware of the sugar content, Plaintiff answered "I did, but, of course, you know, it was the healthier choice outside of water." (*Id.*, Ex. A, T. 84:17-21).  In addition to the lite label, the additional reasons Plaintiff purchased the Arnold Palmer Lite Product included taste, value, quenching thirst, and brand familiarity.  (*Id.*, Ex. A, T. 87:4-21; T. 91:2-8).

Plaintiff first came to believe that he was deceived by Defendant around February 2020. (*Id.*, Ex. A, T. 91:9-22; and Ex. B, answer to interrogatory number 16).  He admits buying the Arnold Palmer Lite Product in 2020 (*Id.*, Ex. A, T. 73:13-15) and between January 2021 and January 2022. (*Id.*, Ex. A, T. 93:7-10; Complaint, ¶ 73).

Plaintiff's subsequent purchases, after coming to the belief he was deceived by the label, conclusively demonstrate that the label statements concerning sugar and calorie content were not material to the transactions. *See Siegel,* 612 F.3d at 937.  Plaintiff also did not testify that the dual column format nutrition statement, the lack of an identified reference food, or the label statement "an American Company-Family Owned & Operated" (i.e. the other 3 claimed deceptions), were reasons for his purchases.  Hence, no facts exist to support claims that those label statements caused any injury to Plaintiff either.

Plaintiff's admissions about subsequent purchases make *Siegel* particularly applicable.  In *Siegel,* the plaintiff sued oil companies claiming that defendants acted in concert to inflate gas prices artificially.  *Id.* at 933.  During deposition, plaintiff testified purchasing gasoline from defendants for a number of reasons and did so after believing that defendants had engaged in unfair conduct.  *Id.* In affirming summary judgment, the Seventh Circuit ruled:

> We conclude that Siegel does not satisfy either prong of proximate causation:  he fails to show that he was harmed and he fails to demonstrate that the defendants' conduct caused him harm.  Even if Siegel could establish that the defendants' conduct was unfair, in order to establish harm under *Montes*, Siegel must still show that he suffered substantial injury, and that he could not avoid this injury [citation omitted]… Siegel cannot establish harm because he testified that he could (and did) purchase gasoline from stations owned by non-defendants, and that he continued to purchase gasoline from the defendants even after he brought this lawsuit.   And Siegel cannot show that the defendants' conduct *caused* him to purchase their gasoline, because many factors contributed to Siegel's gasoline purchasing decision; his claim that the defendants' conduct caused him to purchase their gasoline at "artificially inflated prices" is therefore undermined.  [*Id.*, emphasis in original].

Under the rationale in *Siegel*, due to Plaintiff's admissions that:  (1) he continued to buy the Arnold Palmer Lite Product, through January 2022, after becoming aware of the sugar content and after believing he was deceived by the "Lite" label; (2) he considered the Arnold Palmer Lite

Product to be "the healthier choice, outside of water," notwithstanding its sugar content; and (3) he bought the product for varied reasons including those unrelated to the label statements, Plaintiff cannot prove that the claimed misrepresentations and/or omissions were material and/or otherwise caused him to make his purchases.

**IV.    This Court Should Enter Summary Judgment on the ICFA Claim Because, With Respect to the 20-Ounce Container Plaintiff Purchased, Plaintiff Admits Buying that Product Only When the 23-Ounce Product Was Not Available**

As stated in *Siegel*, "absent proof that *but for* the defendant's conduct, he would not have purchased the defendant's [product], he is not entitled to relief. *Id.,* 612 F3d at 937.

In response to the interrogatory seeking details of purchases, Plaintiff stated that he purchased "a large sized version of the Product weekly. . . between February 6, 2019 and February 6, 2022." (Donovan Dec., Ex. A, T. 58:9-T. 59:23; and Ex. B, interrogatory answer No. 2).  In his deposition, Plaintiff identified a 23-ounce can (i.e. the 23-Ounce Product) as the Arnold Palmer Lite Product he was referencing in that interrogatory answer.  (*Id.*, Ex. A, T. 67:4-T.68:3; and Ex. C).  Plaintiff preferred purchasing cans of the 23-Ounce Product because "[t]hey were larger" and provided a better value.  (*Id.*, Ex. A, T. 63:16-21).  The label on the 23-ounce can is not the subject of the Complaint.

Other than cans and gallon containers, Plaintiff "sometimes" purchased "the smaller bottle" that was plastic (*Id.*, Ex. A, T. 62:3-15).  He did not know the size of that smaller plastic bottle or how many times he bought the product in the smaller plastic bottle.  (*Id.*, Ex A, T. 62:11-20).  Plaintiff was presented with a 20 ounce container of the Arnold Palmer Lite Product having a golf ball shape like the product depicted in the Complaint.  (*Id.*, Ex. A, T.82:24-83:4; Ex. D; compare with Complaint, ¶ 7).  Plaintiff never purchased a product in that container.  (*Id.*, Ex. A, T.82:24-83:4; and Ex. D).

When shown another 20-ounce Arnold Palmer Lite Product, Plaintiff stated that he would make purchases of that container "only if the cans weren't available." (Donovan Dec., Ex. A, T. 99:20-100:2; and Ex. F). Plaintiff does not know when he purchased the product in that particular container. (*Id.*, Ex. A, T. 98:17-T.99:6). Plaintiff also does not know how much money he expended for such purchases. (*Id.*, Ex. A, T. 100:3-5). Of significance to this motion, Plaintiff testified as follows with regard to that 20-ounce container:

> Q. Would it be fair to say that the reason that you bought or a determinative factor for the reason you bought P-12 [the 20 ounce container] is because the cans were not available?
>
> A. That's correct.
>
> [*Id.*, Ex. A, T. 100:6-10; and Ex. F].

Additionally, the label on that 20 ounce container is not germane because it does not have the dual column serving size format, the statement about calorie content, or the sugar content statement claimed actionable. (*Id.,* Ex. F; compare with *Id.*, Ex. Ex. E; also compare *Id.,* Ex. F with Complaint, ¶ 44). The label on that container Plaintiff bought refers to one serving size of 8 ounces at 50 calories and sugars of 13 grams. (*Id.,* Ex. F). Those statements substantially differ from the label statements about calories and sugars in the 20-Ounce Product at issue. (*Id.*, Ex. E; Complaint, ¶¶ 20 and 44).

Based upon: (1) Plaintiff's admission that his purchases of the 20 ounce container of the Arnold Palmer Lite Product were only due to the unavailability of the 23-Ounce Product (*Id.*, Ex. A, T. 100:6-10; and Ex. F); (2) the significant differences between the label on that 20-ounce container and the label statements at issue; (3) his lack of knowledge as to when he purchased that 20 ounce container (*Id.*, Ex. A, T. 98:17-T.99:6); and (4) his inability to testify about the total amount of money expended on those purchases (*Id.*, Ex. A, T. 100:3-5), Plaintiff cannot demonstrate that the accused label statements were a proximate cause for damage under ICFA.

**V.**    **Defendant is Entitled to Summary Judgment on the ICFA Claim Because Plaintiff Testified that the Product Was Fairly Priced and Provided Great Value**

As observed in *Korte v. Pinnacle Foods Grp., LLC*, 17-cv-199-SMY-SCW, 2018 WL 1508855, at *4 (S.D. Ill. Mar. 27, 2018):

> "The actual damage element of an ICFA claim requires that the plaintiff suffer 'actual pecuniary loss.' *Kim v. Carter's Inc.*, 598 F.3d 362, 365 (7th Cir. 2010); *citing Mulligan v. QVC*, Inc., 888 N.E.2d 1190, 1197 (2008). In the consumer context, a plaintiff may satisfy this element if the seller's deception deprives them of the benefit of his or her bargain by causing them to pay 'more than the actual value of the property.'"

In circumstances where a plaintiff does not state that the product was defective or that he or she would have paid less in the marketplace, no claim for a price premium exists. *See Stemm v. Tootsie Roll Industries, Inc.*, 374 F. Supp. 3d 734, 743 (N.D. Ill. 2019).

Here, Plaintiff claims the "value of the Product that Plaintiff purchased was materially less than its value as represented by Defendant." (Complaint, ¶ 54). However, in his deposition, Plaintiff considered the Arnold Palmer Lite Product to have great value. (Donovan Dec., Ex. A, T. 86:4-17). He also testified that he preferred the cans of the 23-Ounce Product because they were larger and provided better value. (*Id.*, Ex. A, T. 63:16-21). He agreed that the Arnold Palmer Lite Product probably has the best, if not one of the best, values offered for an iced tea. (*Id.,* Ex. A, T. 86:18-21). When asked whether he believed that he paid more or less for the Arnold Palmer Lite Product due to the "Lite" label, Plaintiff testified "No. I think it was a fair price." (*Id.*, Ex. A, T. 106:16-20). Given these admissions, just grounds exist to enter summary judgment on the ICFA claim because Plaintiff cannot prove that the claimed deception caused him to pay more than the actual value for the Arnold Palmer Lite Product.

**VI.**     **A Judgment Dismissing the ICFA Claim Authorizes Dismissal of the Unjust Enrichment Claim**

To demonstrate unjust enrichment under Illinois law, a plaintiff must prove:  (1) the defendant has "unjustly retained a benefit to the plaintiff's detriment" and (2) the defendant's "retention of the benefit violates fundamental principles of justice, equity, a good conscience." *See Siegel,* 612 F.3d at 937 (citing and quoting *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.,* 131 Ill. 2d 145, 160 (1989)).  Where "an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim- and, of course, unjust enrichment will stand or fall with the related claim." *Cleary v. Phillip Morris, Inc.,* 656 F.3d 511, 517 (7th Cir. 2011); *see also Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreens Co.,* 631 F.3d 436, 447 (7th Cir. 2011) (stating that "[u]nder Illinois law, unjust enrichment is not a separate cause of action.").  The Seventh Circuit has held that, where a party fails to state a claim under the ICFA, that party necessarily fails to state a claim for unjust enrichment. *See Toulon v. Cont'l Cas. Co.*, 877 F.3d 725, 741-42 (7th Cir. 2017) ("We agree with the district court that [plaintiff] failed to state a claim for unjust enrichment because she failed to state a claim for fraud or for violation of the ICFA.").

Plaintiff's unjust enrichment claim seeks restitution.  (Complaint, ¶ 133).  That cause of action is based upon the same alleged conduct that forms the factual basis grounds for the ICFA claim (i.e. that the 20-Ounce Product "was not as represented and expected").  (*Id.*).  As Plaintiff cannot prove causation, deception or damages under ICFA, the unjust enrichment cause of action, which is entirely dependent upon the ICFA claim, necessarily fails.

**VII.**    **No Facts Exist To Support a Claim Under Other State Consumer Fraud Laws Due to the Presumption Against Extraterritorial Application**

Plaintiff sues under the following state consumer protection laws, claimed to be similar to ICFA:  Iowa, Louisiana, West Virginia, Michigan, Texas, Arkansas, Georgia, Montana, Ohio,

Indiana, Nebraska, Alabama, Virginia, and Oklahoma (collectively, "Other State Consumer Fraud Laws"). (Complaint, ¶¶ 98-101). However, these Other State Consumer Fraud Laws are subject to the presumption against extraterritorial application. *See Healy v. Beer Institute, Inc.*, 491 U.S. 324, 336 (1989) ("concerning the extraterritorial effects of state economic regulation... the 'Commerce Clause ... precludes the application of a state statute to commerce that takes place wholly outside of the State's borders, whether or not the commerce has effects within the State'") (other citations omitted); *see also Nat'l Solid Wastes Mgmt. Ass'n v. Meyer*, 165 F.3d 1151, 1152 (7th Cir. 1999) (ruling that a Wisconsin statute was unconstitutional for reasons including that "it required municipalities outside Wisconsin's borders to enact ordinances favoring Wisconsin's system and thus had extraterritorial application").

Plaintiff does not think he made any purchases of the Arnold Palmer Lite Product in state other than in Illinois and Missouri. (Donovan Dec., Ex. A, T. 34:19-21). The only purchases he identified in answers to interrogatories were in Illinois. (*Id.*, Ex. B, answer number 2). Based upon the presumption against extraterritorial application, the Other State Consumer Fraud Laws have no bearing upon Plaintiff's purchases, entitling Defendant to summary judgment on this claim.

## **CONCLUSION**

Defendant respectfully requests that this Court grant Defendant's motion for summary judgment in its favor against all Plaintiff's claims pursuant to Fed. R. Civ. P. 56.

Dated: June 26, 2022

Respectfully submitted,

*/s/ Robert P. Donovan*
Robert P. Donovan, Esq. (admitted *Pro Hac Vice*)

STEVENS & LEE, P.C.
669 River Drive, Suite 201
Elmwood Park, New Jersey 07407
Telephone: (201) 857-6778
Robert P. Donovan, Esq. (Admitted *Pro Hac Vice*)
*Robert.donovan@stevenslee.com*

-and-

SAUL EWING ARNSTEIN & LEHR LLP
161 North Clark Street, Suite 4200
Chicago, Illinois 60514
Telephone:  (312) 351-3292
Casey T. Grabenstein, Esq. (6289606)
*Casey.grabenstein@saul.com*

*Attorneys for Defendant,*
*Arizona Beverages USA LLC*

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that on June 26, 2023, he caused the within Motion and Memorandum of Law In Support of the Motion for Summary Judgment, along with the supporting declaration of counsel, to be filed electronically with the Clerk of the U.S. District Court, using the Court's CM/ECF system, which sent electronic notification to all parties who have appeared and are registered as CM/ECF participants in this matter.

*/s/ Robert P. Donovan*