# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KENNETH CRAWFORD, individually and on behalf of all others similarly situated,<br><br>                Plaintiff,<br><br>- against -<br><br>ARIZONA BEVERAGES USA LLC,<br><br>                Defendant | 3:22-cv-00220-DWD |

Plaintiff's Memorandum of Law in Opposition to
Defendant's Motion to Exclude Expert Declaration

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................................ ii

TABLE OF AUTHORITIES ........................................................................................................ iii

INTRODUCTION .......................................................................................................................... 1

FACTUAL BACKGROUND ......................................................................................................... 1

LEGAL STANDARDS .................................................................................................................. 2

ARGUMENT .................................................................................................................................. 3

I.     SHOWING RESPONDENTS ONLY FRONT LABEL WAS CONSISTENT WITH THEORY OF CASE AND PLAINTIFF'S ALLEGATIONS ................................ 3

II.    MATTHEWS REPORT IS RELEVANT AND WILL ASSIST TRIER OF FACT .................................................................................................................................. 4

        A.     Report Confirms "Lite" was Significant to Purchasers ........................................... 5

        B.     "Entirety of Label" Inconsistent With Plaintiff's Theory of the Case .................... 6

        C.     Challenge to "Quota Sampling" That Survey Focused on Broader Area than Illinois Insufficient to Show Results Would be Different if Only Illinois ..................................................................................................................... 6

III.   DR. MATTHEWS IS QUALIFIED TO OFFER AN EXPERT OPINION ABOUT DAMAGES ........................................................................................................ 8

CONCLUSION ............................................................................................................................... 9

## TABLE OF AUTHORITIES

**Cases**

*Benson v. Newell Brands, Inc.*,
 No. 19-cv-6836, 2021 WL 5321510 (N.D. Ill. Nov. 16, 2021) .................................................. 9

*Bullock v. Sheahan*,
 519 F. Supp. 2d 760 (N.D. Ill. 2007) ......................................................................................... 2

*Chicago Title & Tr. Co. v. Verona Sports, Inc.*,
 No. 91-cv-5237, 1992 WL 162263 (N.D. Ill. July 6, 1992) ....................................................... 4

*Comcast Corp. v. Behrend*,
 569 U.S. 27 (2013) ..................................................................................................................... 9

*Crawford v. AriZona Beverages USA LLC*,
 No. 22-cv-220, 2023 WL 1100260 (S.D. Ill. Jan. 30, 2023) ...................................................... 1

*Dataquill Ltd. v. Huawei Techs. Co. Ltd.*,
 No. 13-cv-633, 2015 WL 12912360 (E.D. Tex. June 11, 2015) ............................................... 7

*Daubert v. Merrell Dow Pharms., Inc.*,
 509 U.S. 579 (1993) ........................................................................................................... 2, 3, 4

*Davis v. Duran*,
 277 F.R.D. 362 (N.D. Ill. 2011) ................................................................................................. 3

*Eike v. Allergan, Inc.,*
 850 F.3d 315 (7th Cir. 2017) ..................................................................................................... 9

*Eike v. Allergan, Inc.*,
 No. 12-cv-1141, 2016 WL 4272127 (S.D. Ill. Aug. 15, 2016) .................................................. 9

*Ernst v. City of Chicago*,
 39 F. Supp. 3d 1005 (N.D. Ill. 2014) ......................................................................................... 2

*GlaxoSmithKline LLC v. Glenmark Pharms. Inc.*,
 No. 14-cv-877, 2017 WL 8948975 (D. Del. May 30, 2017) ..................................................... 7

*Hill's Pet Nutrition, Inc. v. Nutro Prod., Inc.*,
 258 F. Supp. 2d 1197 (D. Kan. 2003) ........................................................................................ 6

*In re Lake States Commodities, Inc.*,
 272 B.R. 233 (Bankr. N.D. Ill. 2002), *aff'd sub nom. Fisher v. Page*, No. 01-
 cv-1698, 2002 WL 31749262 (N.D. Ill. Dec. 3, 2002) .............................................................. 8

*Kumho Tire v. Carmichael*,
 526 U.S. 137 (1999) ................................................................................................................... 2

*Lapsley v. Xtek, Inc.*,
 689 F.3d 802 (7th Cir. 2012) ................................................................................................ 2, 3

*Loeffel Steel Prods., Inc. v. Delta Brands, Inc.*,
 372 F. Supp. 2d 1104 (N.D. Ill. 2005) ...................................................................................... 8

*McCullock v. H.B. Fuller Co.*,
 61 F.3d 1038 (2d Cir. 1995)...................................................................................................... 2

*Nat. Res. Def. Council v. Illinois Power Res. Generating, LLC*,
 No. 13-cv-1181, 2018 WL 5777476 (C.D. Ill. Nov. 2, 2018) ................................................... 4

*PBM Prod., LLC v. Mead Johnson & Co.*,
 639 F.3d 111 (4th Cir. 2011) .................................................................................................... 4

*Restivo v. Hessemann*,
 846 F.3d 547 (2d Cir. 2017)...................................................................................................... 5

*Spearman Indus. v. St. Paul Fire & Marine Ins. Co.*,
 128 F.Supp.2d 1148 (N.D.Ill.2001) .......................................................................................... 2

*Spraying Systems Co. v. Delavan, Inc.*,
 762 F. Supp. 772 (N.D. Ill. 1991) ............................................................................................. 7

*Spraying Systems Co. v. Delavan, Inc.*,
 975 F.2d 387 (7th Cir. 1992) .................................................................................................... 7

*Stollings v. Ryobi Techs., Inc.*,
 725 F.3d 753 (7th Cir. 2013) .................................................................................................... 5

*Suchanek v. Sturm Foods, Inc.*,
 311 F.R.D. 239 (S.D. Ill. 2015) ............................................................................................. 4, 5

*Tortilla Factory, LLC v. GT's Living Foods, Inc.*,
 No. 17-cv-7539, 2022 WL 3134458 (C.D. Cal. June 9, 2022) ................................................ 8

*United States v. Finch*,
 630 F.3d 1057 (8th Cir. 2011) .................................................................................................. 3

*Weaver v. Champion Petfoods USA Inc.*,
 No. 18-cv-1996, 2019 WL 7370374 (E.D. Wis. Dec. 31, 2019) .............................................. 6

*Zerega Ave. Realty Corp. v. Hornbeck Offshore Transp., LLC*,
 571 F.3d 206 (2d Cir. 2009)...................................................................................................... 5

**Rules**

Federal Rule of Evidence 702 ............................................................................................... 2, 4

Federal Rule of Evidence 702(a) ................................................................................................ 2

**Treatises**

McCarthy on Trademarks and Unfair Competition (5th ed. 2017) ............................................... 3

Mike Rappeport, *Response to Survey Methodology Articles*,
    96 Trademark Rep. 769 (2006) ................................................................................................ 4

## INTRODUCTION

Plaintiff Kenneth Crawford ("Plaintiff") submits this Memorandum of Law in Opposition to the Motion by Arizona Beverages USA LLC ("Defendant" or "Arizona") to Exclude the Expert Declaration of Andrea Lynn Matthews. ECF No. 51, Defendant's Memorandum in Support of Defendant's Motion to Exclude the Expert Declaration of Andrea Lynn Matthews ("Def. Mem.").

## FACTUAL BACKGROUND

Plaintiff filed this action on February 6, 2022, alleging that the representation "Lite" was (1) "misleading with respect to the Product's sugar content," because "sugar is the second most predominant ingredient in the Product by weight," and (2) "misleading with respect to the Product's calorie content," because the Product "is not low in calories" and "it does not identify any other food" as a "reference food" to provide "the consumer [with] context for [this] claim." Complaint, ECF No. 1 at ¶ II(A), 19, II(B), 35-37.

Following Defendant's Motion seeking dismissal, filed on April 29, 2022, the Court permitted Plaintiff's consumer fraud claims, arising under the Illinois Consumer Fraud and Deceptive Practices Act ("ICFA"), to proceed because "the Court cannot say that as a matter of law that significant portion of reasonable consumers are not deceived by the 'Lite' claim made by Defendant in its labeling." *Crawford v. AriZona Beverages USA LLC*, No. 22-cv-220, 2023 WL 1100260, at *5 (S.D. Ill. Jan. 30, 2023).

Plaintiff filed his Motion for Class Certification on June 13, 2023, supported by the Declaration of Andrea Lynn Matthews. ECF Nos. 32, 32-3 ("Matthews Decl."). Defendant filed its Opposition and Motion to Exclude the Expert Declaration of Andrea Lynn Matthews on December 15, 2023, the latter of which was re-filed on December 18, 2023 following the Court's notice striking it. ECF Nos. 46, 49-51.

## LEGAL STANDARDS

Expert testimony must meet the three requirements of Federal Rule of Evidence 702: qualifications, reliability, and relevance. Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993). An expert must be "qualified . . . by knowledge, skill, experience, training, or education." Fed. R. Evid. 702. The expert's testimony must also have a "reliable foundation." *Daubert*, 509 U.S. at 580. Though particular factors may be considered, "the test of reliability is 'flexible,' and *Daubert's* list of specific factors neither necessarily nor exclusively applies to all experts or in every case." *Kumho Tire v. Carmichael*, 526 U.S. 137, 141 (1999). Finally, expert testimony must be relevant by "help[ing] the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a).

Nonetheless, "'[t]he rejection of expert testimony is the exception rather than the rule[.]'" *Bullock v. Sheahan*, 519 F. Supp. 2d 760, 762 (N.D. Ill. 2007) (citing *Spearman Indus. v. St. Paul Fire & Marine Ins. Co.*, 128 F.Supp.2d 1148, 1150 (N.D.Ill.2001)). Furthermore, "trial judges acting as gatekeepers [under Rule 702] do not assume 'the role of St. Peter at the gates of heaven, performing a searching inquiry into the depth of an expert witness's soul' that would 'inexorably lead to evaluating witness credibility and weight of the evidence, the ageless role of the jury.'" *Ernst v. City of Chicago*, 39 F. Supp. 3d 1005, 1009 (N.D. Ill. 2014) (citing *McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1045 (2d Cir. 1995)).

In other words, "[a] *Daubert* inquiry is not designed to have the district judge take the place of the jury to decide ultimate issues of credibility and accuracy." *Lapsley v. Xtek, Inc.*, 689 F.3d 802, 805 (7th Cir. 2012). Thus, "[i]f the proposed expert testimony meets the *Daubert* threshold of relevance and reliability, the accuracy of the actual evidence is to be tested before the jury with

the familiar tools of 'vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof.'" *Lapsley*, 689 F.3d at 805 (citing *Daubert*, 509 U.S. at 596).

Furthermore, "[a]bsent strong factors favoring exclusion, '[d]oubts regarding whether an expert's testimony will be useful should generally be resolved in favor of admissibility.'" *Davis v. Duran*, 277 F.R.D. 362, 366 (N.D. Ill. 2011) (citing *United States v. Finch*, 630 F.3d 1057, 1062 (8th Cir. 2011)).

## ARGUMENT

### I. SHOWING RESPONDENTS ONLY FRONT LABEL WAS CONSISTENT WITH THEORY OF CASE AND PLAINTIFF'S ALLEGATIONS

Defendant's assertion that the "failure to show survey participants the entire label, or even the specific label identified in the Complaint, makes the survey conducted by Dr. Matthews irrelevant" is mistaken. Def. Mem. at 9.

That survey participants were not shown "the entire label, or even the specific label identified in the Complaint" was entirely proper because this was consistent with the purchase experience of Plaintiff and the proposed class.

However, even if Defendant's assertion were true, "[t]he majority rule is that while technical deficiencies can reduce a survey's weight, they will not prevent the survey from being admitted into evidence." 6 McCarthy on Trademarks and Unfair Competition § 32:170 (5th ed. 2017).

In addition, "[w]hile there will be occasions when the proffered survey is so flawed as to be completely unhelpful to the trier of fact and therefore inadmissible, such situations will be rare" and "[u]sually, objections based on flaws in the survey's methodology are properly addressed by

3

the trier of fact." *Suchanek v. Sturm Foods, Inc.*, 311 F.R.D. 239, 246 (S.D. Ill. 2015) (citing *PBM Prod., LLC v. Mead Johnson & Co.*, 639 F.3d 111, 123 (4th Cir. 2011)) (internal edits omitted).

Nonetheless, "the study is not inadmissible [even if Dr. Matthews allegedly] failed to replicate real-world [or marketplace] conditions," because "[f]or statements on packages . . . frequently it is proper to 'focus' the respondent on that aspect or aspects of the product packaging . . . the plaintiff thinks is offending." *Suchanek*, 311 F.R.D. at 247-48 (citing Mike Rappeport, *Response to Survey Methodology Articles*, 96 Trademark Rep. 769, 774-75 (2006)).

This "approach is certainly used by other experts in conducting consumer surveys," demonstrated by the fact that "[s]ome surveys attempt to reduce the impact of preexisting impressions on respondent's answers by . . . direct[ing] respondent's attention to the mark at issue (e.g., 'these stripes on the package'), [even if s]uch efforts are likely to be only partially successful." *Suchanek*, 311 F.R.D. at 247 (citing Shari Seidman Diamond, *Reference Guide on Survey Research*, *in* Fed. Judicial Ctr., Reference Manual on Scientific Evidence, p. 364 (3d ed. 2011)).

## II.     MATTHEWS REPORT IS RELEVANT AND WILL ASSIST TRIER OF FACT

Although Defendant identifies numerous "failure[s]" in the Matthews Report "barring [her] expert testimony altogether would be too drastic a result, especially given the [Defendant's] failure to adequately produce [any] expert[] testimony." Def. Mem. at 10-13; *Chicago Title & Tr. Co. v. Verona Sports, Inc.*, No. 91-cv-5237, 1992 WL 162263, at *2 (N.D. Ill. July 6, 1992).

While "an expert's assumptions can [] be so speculative as to warrant exclusion of testimony under Rule 702 and *Daubert*," the underlying assumptions of the Matthews Report "are [not] so unrealistic and contradictory as to suggest bad faith." *Nat. Res. Def. Council v. Illinois Power Res. Generating, LLC*, No. 13-cv-1181, 2018 WL 5777476, at *4 (C.D. Ill. Nov. 2, 2018)

(quoting *Restivo v. Hessemann*, 846 F.3d 547, 577 (2d Cir. 2017) (quoting *Zerega Ave. Realty Corp. v. Hornbeck Offshore Transp., LLC*, 571 F.3d 206, 214 (2d Cir. 2009))).

The Court should follow the Seventh Circuit's guidance that a "judge should [] let the jury determine how any uncertainty about an [expert's assumptions and methodology] affected the weight of [his or her] testimony," because Defendant is "free to use cross-examination to attack the assumption[s] and to ask [the expert] how altering the assumption[s] would affect his [or her] analysis." *Stollings v. Ryobi Techs., Inc.*, 725 F.3d 753, 767 (7th Cir. 2013).

Hence, "[t]o the extent that Defendant[] want[s] to quibble with [Dr. Matthew's] understanding of the facts or the materials that [s]he [has or has not] reviewed, those are matters for cross-examination because they go more to the weight and credibility of [her] opinions, rather than their admissibility." *Suchanek*, 311 F.R.D. at 245.

A.  Report Confirms "Lite" was Significant to Purchasers

Defendant attempts to mischaracterize Matthews' testimony, claiming she "admitted that her survey does not shed any light on whether the 'Lite' representation on the Product was material to a consumer's decision to purchase the product." Def. Mem. at 7.

However, the Matthews Report found that "73.3% of the sample (143/195 individuals) indicated that they would prefer to purchase the low calorie and low sugar option (95% CI: 67.2%, 79.5%)" and that "[f]or consumers who had previously purchased Arizona iced tea beverages in the past 12 months (n=126), 70.6% of them (89/126) indicated that would prefer to purchase the low calorie and low sugar option (95% CI: 62.6%, 78.4%)." Matthews Decl. at ¶ 73.

Moreover, "of consumers who had purchased Arnold Palmer Lite in the past 12 months (n=22), 77.3% (17/22) indicated that they would prefer to purchase the low calorie and low sugar option (95% CI: 57.9%, 94.4%)." *Id.* This confirms "Lite" was material to purchasers.

5

    B.    <u>"Entirety of Label" Inconsistent With Plaintiff's Theory of the Case</u>

Defendant's claim that "Dr. Matthews' failure to show survey participants the entire label, or even the specific label identified in the Complaint…makes the survey [] irrelevant" disregards that Plaintiff's theory of the case is based on the misleading front label. Def. Mem. at 12.

In contrast to *Weaver*, where "the Survey [did] not test the effect of the BAFRINO statements on consumers' purchasing decisions," the proposed model measured damages attributable to Plaintiff's theory of liability by identifying "the level of consumer confusion regarding the calories and sugar present in the Defendant's Product as it is currently labeled." Def. Mem. at 12 citing *Weaver v. Champion Petfoods USA Inc.*, No. 18-cv-1996, 2019 WL 7370374, at *4 (E.D. Wis. Dec. 31, 2019); Matthews Decl. at ¶ 108.

It then compared "the level of consumer confusion for the Defendant's Product to that of an unknown product," and testing "whether adding '1/3 less calories than Arnold Palmer' to the Defendant's Product impact the level of consumer confusion regarding the calories and sugar present in the product." Def. Mem. at 12 citing *Weaver*, 2019 WL 7370374, at *4; Matthews Decl. at ¶ 108.

In contrast to *Hill's Pet Nutrition*, the Matthews Report demonstrated the effect of Defendant's advertising on the decisions of consumers to purchase the Product. Def. Mem. at 12 citing *Hill's Pet Nutrition, Inc. v. Nutro Prod., Inc.*, 258 F. Supp. 2d 1197, 1207 (D. Kan. 2003).

    C.    <u>Challenge to "Quota Sampling" That Survey Focused on Broader Area than Illinois Insufficient to Show Results Would be Different if Only Illinois</u>

Defendant's attempt to exclude the Matthews Report because it focused on a representative, national sample, as opposed to only Illinois consumers, is without support.

6

First, to assert that "[w]ithout information about the proposed class of Illinois consumers, the survey findings about alleged consumer deception is irrelevant" ignores that "quota sampling [] can obtain a sample that has similar percentages to [] a given target market's demographics or demographics found by the United States Census." Def. Mem. at 12 citing *Spraying Systems Co. v. Delavan, Inc.*, 975 F.2d 387, 394 n. 5 (7th Cir. 1992) (finding selection of relevant universe of survey participants impacted probative value of survey); Matthews Report ¶ 81.

That the Matthews Report used a "so-called quota sample rather than a probability sample" or other methodology "go[es] to the weight of [proffered expert] testimony, not its admissibility under Rule 702." *Dataquill Ltd. v. Huawei Techs. Co. Ltd.*, No. 13-cv-633, 2015 WL 12912360, at *2-3 (E.D. Tex. June 11, 2015); *GlaxoSmithKline LLC v. Glenmark Pharms. Inc.*, No. 14-cv-877, 2017 WL 8948975, at *10 (D. Del. May 30, 2017)

Second, "It is widely accepted by survey professionals that quota sampling is necessary when using online panels to correct for overrepresentation of various gender, region, and age combinations." Matthews Report ¶ 81 citing Baker et al. 2010. Defendant's methodology would have created similar survey errors noted by the lower court in *Spraying Systems*, where "[only] five states were chosen." *Spraying Systems Co. v. Delavan, Inc.*, 762 F. Supp. 772, 779 n.7 (N.D. Ill. 1991), *aff'd*, 975 F.2d 387 (7th Cir. 1992).

Third, to the extent the survey did not focus only on Illinois consumers, its variables included "Geographic region indicators for the Midwest, Northeast, South, and West." Matthews Report ¶ 57. The Report "then assessed whether preferences for a lite iced tea lemonade that is low calorie and low sugar varied by demographic group using a logistic regression," concluding that such preferences "are consistent across the target market in race, ethnicity [and] region." Matthews Report ¶¶ 75-76.

7

Fourth, unlike the plaintiff in *Spraying Systems Co.*, which failed to meet its "burden of proof…[as] the party trying to establish legal protection for the [---JET] mark[s]," as "expert evidence, [the Matthews Report] [] need only assist the trier of fact, through the application of scientific, technical or specialized expertise." *In re Lake States Commodities, Inc.*, 272 B.R. 233, 243 (Bankr. N.D. Ill. 2002), *aff'd sub nom. Fisher v. Page*, No. 01-cv-1698, 2002 WL 31749262 (N.D. Ill. Dec. 3, 2002) quoting *City of Tuscaloosa v. Harcros Chemicals, Inc.*, 158 F.3d 548, 564 (11th Cir. 1998).

Finally, the Matthews Report "need not prove the [P]laintiff['s] case by [itself] [since it] merely constitute[s] one piece of the puzzle." *In re Lake States Commodities, Inc.*, 272 B.R. 233, 243. This is why "the [C]ourt [should be] unpersuaded that [the] decision to…draw on a national sample [does not] render[] the survey inadmissible." *Tortilla Factory, LLC v. GT's Living Foods, Inc.*, No. 17-cv-7539, 2022 WL 3134458, at *7 (C.D. Cal. June 9, 2022) (concluding that while "a sample limited to California kombucha drinkers would likely be more probative than a national sample of potential kombucha drinkers, [] survey [wa]s nonetheless probative").

Accordingly, "questions relating to the bases and sources of an expert's opinion affect only the weight to be assigned that opinion rather than its admissibility." *Loeffel Steel Prods., Inc. v. Delta Brands, Inc.*, 372 F. Supp. 2d 1104, 1119 (N.D. Ill. 2005).

### III. DR. MATTHEWS IS QUALIFIED TO OFFER AN EXPERT OPINION ABOUT DAMAGES

Defendant argues that "[b]ecause Plaintiff has failed to meet his burden to establish that Dr. Matthews is qualified to testify as an expert on damages, [her] opinions relating to how a price premium will be calculated should be excluded." Def. Mem. at 15.

This "piggybacking" argument disregards that "price-premium damages calculations based

8

on conjoint analysis designed to isolate the portion of the payment attributable to a misrepresented product feature have been accepted by several courts." *Benson v. Newell Brands, Inc.*, No. 19-cv-6836, 2021 WL 5321510, at *5 (N.D. Ill. Nov. 16, 2021) citing *In re Fluidmaster, Inc., Water Connector Components Prods. Liab. Litig.*, No. 14-cv-5696, 2017 WL 1196990, at *57 (N.D. Ill. Mar. 31, 2017) (citing cases) ("A damages calculation that reflects the difference between the market price of the product as represented and as delivered is neither novel nor problematic from a class certification perspective.").

To contend that "the damages model proffered by Dr. Matthews does not isolate the portion of any alleged price premium attributable to the allegedly misrepresented Product feature" ignores that conjoint analysis can "statistically identify how much consumers are willing to pay for each given component of a product's makeup," such as "Lite." Def. Mem. at 17; Matthews Report ¶ 187 *compare with Benson*, 2021 WL 5321510, at *5 (describing "incremental economic value to Class Members from the benefits they associate with the Challenged Claims").

Finally, the existence of a viable damages model that makes use of common, class-wide evidence is consistent with *Comcast*, and all that is required, because "[w]hether the damages model is accurate [. . .] is a question that will be determined by a finder of fact." *Eike v. Allergan, Inc.*, No. 12-cv-1141, 2016 WL 4272127, at *6 (S.D. Ill. Aug. 15, 2016), *vacated and remanded,* 850 F.3d 315 (7th Cir. 2017);[1] *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013).

## CONCLUSION

For the foregoing reasons, the Court should deny Defendant's Motion.

Dated:     January 18, 2024

                                                          Respectfully submitted,

---

[1] *Eike v. Allergan, Inc.* was vacated and remanded because class members had no standing to sue, given the lack of an actionable injury.

9

                                                /s/Spencer Sheehan  
                                                Sheehan & Associates P.C.  
                                                60 Cuttermill Rd Ste 409  
                                                Great Neck NY 11021  
                                                (516) 268-7080  
                                                spencer@spencersheehan.com

## Certificate of Service

I certify that on January 18, 2024, I served and/or transmitted the foregoing by the method below to the persons or entities indicated, at their last known address of record (blank where not applicable).

|  | CM/ECF | First-Class Mail | Email | Fax |
|---|---|---|---|---|
| Defendant's Counsel | ☒ | ☐ | ☐ | ☐ |
| Plaintiff's Counsel | ☐ | ☐ | ☐ | ☐ |
| Courtesy Copy to Court | ☒ | ☐ | ☐ | ☐ |

/s/ Spencer Sheehan