```
 1                        IN THE UNITED STATES DISTRICT COURT
 2                           SOUTHERN DISTRICT OF ILLINOIS
 3
     KENNETH CRAWFORD,            )
 4                               )
                Plaintiff,        )
 5                               )
     v.                          )  No. 22-CV-220
 6                               )  East St. Louis, Illinois
     ARIZONA BEVERAGES USA, LLC, )
 7                               )  MOTION HEARING
                Defendant.        )
 8
 9
10
                          TRANSCRIPT OF PROCEEDINGS
11               BEFORE THE HONORABLE DAVID W. DUGAN
                            JULY 18, 2024
12
13   APPEARANCES:
14   FOR THE PLAINTIFF:    SPENCER I. SHEEHAN
15
     FOR THE DEFENDANT:    CASEY T. GRABENSTEIN
16                         ROBERT PAUL DONOVAN
17
18
19
20
                          Erikia Schuster, RPR
21                          IL CSR #084-00
                            750 Missouri Avenue
22                       East St. Louis, IL  62201
                            618-482-9226
23                 Erikia_Schuster@ilsd.uscourts.gov
24       Proceedings recorded by mechanical stenography; transcript
                 produced by computer-aided transcription
25
```

1          COURTROOM DEPUTY:  We are now on the record in case

2    number 22-CR-220, Crawford vs. Arizona Beverages for a motion

3    hearing.  Will the parties please identify themselves for the

4    record.

5          MR. SHEEHAN:  For the plaintiff, Spencer Sheehan.

6    Good morning.

7          THE COURT:  Good morning.

8          MR. GRABENSTEIN:  Good morning.  This is Casey

9    Grabenstein for Arizona Beverages USA.

10          MR. DONOVAN:  Good morning, Your Honor.  Robert

11    Donovan on behalf of the Defendant.

12          THE COURT:  Good morning, everyone.  We have a motion

13    for attorney's fees, document 59, motion for discovery expert

14    fees, document 63.  There's quite a bit of briefing in this.

15    I have read it all, read some of the cases that I thought

16    might be most significant for today.  So I thought I would

17    leave it open to whoever wishes to argue this just keeping in

18    mind I have read the briefing somewhat.  I'm sure I'll have

19    some questions for you as we proceed.

20          Mr. Grabenstein or Mr. Donovan is going to argue for

21    the first motion, that being for attorney's fees.

22          MR. DONOVAN:  Your Honor, this is Mr. Donovan.  I'm

23    going to be arguing that.

24          THE COURT:  Let me warn you.  You're breaking up just

25    a little bit.  I think it might be a microphone issue, but I

1    don't know.

2          MR. DONOVAN:  Okay, Your Honor.  Can you hear me?

3          THE COURT:  I hear you.  Thanks.

4          MR. DONOVAN:  Your Honor, this is a matter that in my

5    view doesn't present the typical fee motion where we're

6    seeking fees only because the Plaintiff's case was frivolous

7    or weak.  This is a matter that presents an extraordinary

8    circumstance evidencing a reckless pursuit of a frivolous

9    claim after facts disclosed in discovery conclusively

10   demonstrated that there was absolutely no chance, no chance of

11   recovery, yet in pursuing those claims Plaintiff wasted the

12   time and valuable resources of the Court and the parties.

13          I'd like to focus, you know -- one of the factors in

14   addition to the manifest bad faith, Your Honor, is the text.

15   The Plaintiff cites to a case in their opposition.  I'll drop

16   a footnote.  I'm not going to make much of this, Your Honor,

17   but their opposition was late.  It was due on May 10th, but it

18   was filed on May 11th.  But in any event, they cite to

19   *Davidson*, and that Court notes that deterrence is a relatively

20   easy factor because by awarding the fees you're going to deter

21   this type of conduct.  Here there's an extraordinary

22   circumstance -- in addition to the bad faith -- as part of the

23   bad faith, Your Honor, is that the Defendant has been besieged

24   by lawsuits filed by counsel, many of which can take cookie

25   cutter allegations that parrot the same assertions that were

1     made in this case.

2          THE COURT:  How does that factor into what I perceive

3     to be a fairly narrow issue in this particular case?  The fact

4     that there are other cases out there throughout the United

5     States -- I think there's three that you referred to -- how

6     does that factor into any of these factors, or how does it

7     weigh in on any of these factors?

8          MR. DONOVAN:  I would say for purposes of deterrence,

9     Your Honor, because they all have a common theme filed by

10    counsel and this matter, Your Honor, I would just say kind of

11    fits that pattern because it is a lawsuit -- in my view, Your

12    Honor, this is a lawsuit looking for a client.  This plaintiff

13    testified that he learned about Mr. Sheehan through a Facebook

14    advertisement and to tie in to the other suits, Judge, is

15    those Facebook advertisements have been identified in the

16    other suits.  I would acknowledge that the other suits

17    probably have limited bearing on the deterrence factor, but

18    they give the Court some context as to this is not just a

19    one-off, Your Honor.

20         And there's no dispute -- and there's no dispute in

21    the record that if the Court were to order these, the

22    Plaintiff's counsel would be responsible.  So I would argue

23    that these other suits would be relevant for the Court's

24    consideration.  And that's why they were brought up because

25    there is a factor of deterrence that is part of the bad faith

1   element under *Krautsack*.  I refer to the remainder of the

2   papers, Your Honor.  I don't want to repeat them, of all the

3   sundry matters where the Plaintiff alleged in the complaint

4   that something was material to him and he acknowledged that he

5   continued to buy the product.  That is just one example.

6        I don't want to belabor the point, but we have filed

7   a motion for summary judgment in this case and Your Honor's

8   opinion on March 30th acknowledged that some of that briefing

9   was completely unnecessary because of the Plaintiff's belated

10  abandoning of the claims.

11       So I think that when you look at the whole context of

12  this case, of how of the case was handled, the case should

13  have been abandoned and dismissed not requiring a motion for

14  summary judgment.  I would respectfully submit, your Honor,

15  that we confined reasonably the request.  We're not seeking

16  wholesale fees from the date the complaint was filed.  It is

17  confined to the period after the deposition up through the

18  entry of summary judgment.  Thank you.

19       THE COURT:  Thank you.  Mr. Grabenstein, do you want

20  to add anything before we go to Mr. Sheehan?

21       MR. GRABENSTEIN:  No, Your Honor.  Thank you.

22       THE COURT:  Thank you.  Mr. Sheehan?

23       MR. SHEEHAN:  Thank you, Your Honor.  I would submit,

24  Your Honor, beyond what was already submitted in the papers

25  there was no, you know, I can say in more than I think the

1    motion papers did.  I'm a little bit -- you know, it is

2    disturbing me the allegations of bad faith.  We litigated -- I

3    say we, I mean, the Plaintiff, Mr. Crawford and on his behalf

4    as counsel brought this case in good faith.  I understand Your

5    Honor's order granting summary judgment and that's what

6    happens in cases, you win, you lose, and at least in the

7    context of attorney fees that go to, you know, the prevailing

8    party defendant, it is a very rare circumstance.  And I think

9    the Courts interpreting that provision have confirmed that

10   there must be bad faith, and I believe that while the motion

11   papers that -- the opposition papers we submitted affirmed or

12   showed that there was no bad faith, we had a different opinion

13   about what the evidence showed.  I think that different

14   opinion was not so unreasonable as to show bad faith.  I

15   believe that while Your Honor's decision would obviously like

16   for it to have gone another way, I would not have brought that

17   or even filed that opposition for summary judgment if there

18   was like we believed a chance to have some success.  I

19   believed that our opposition to other summary judgment motion

20   and continuing the case after Plaintiff's deposition and after

21   Defendant's motion for summary judgment, I believe and

22   continue to believe that that was in good faith.

23          I believe that without making allegations about, you

24   know, Defendant's counsel or whatever, but unfortunately they

25   made statements about me, Plaintiff's counsel, I believe that

1   the actions of the Defendant's counsel are in some ways

2   intended to chill and to punish, which is contrary to the

3   goals of the ICFA, and it is inconsistent with the ICFA as

4   established by the legislature.  I submit and I think the

5   docket reflects nothing but the upmost courtesy and a

6   cooperation, you know, civility between the parties, you know,

7   which weighs against a finding of bad faith, notwithstanding,

8   of course, as Mr. Donovan stated that they're only seeking

9   this with respect to conduct after the Plaintiff's deposition.

10  But I would respect that the civility shown not just by me,

11  but also between Mr. Donovan, every extension request granted,

12  every request about the Plaintiff's expert granted, you know,

13  I know enough, Your Honor, especially my experience which I am

14  sure it is known for better or worse to everybody on this call

15  about when you have a viable claim.  And while, you know, I

16  believe that Mr. Crawford's testimony, yes, could he have had

17  said some different things?  You know, that is always going to

18  happen in depositions with a layperson.

19          We believed we had a good client.  We conducted

20  ourself in good faith.  I know I did, and I believe Mr.

21  Crawford did, and I believe that Mr. Donovan's motion to be

22  honest is made in bad faith if we're really talking about it,

23  Your Honor, and I think --

24          THE COURT:  I'm going to interrupt you.  Maybe put a

25  finer point on the way I'm looking at this.  I did pick up in

1    effect that Mr. Donovan's motion that I'm dealing with now for

2    the attorney's fees limited his scope of it voluntarily not

3    from the date of filing of the lawsuit.  So you've mentioned a

4    couple of times that, you know, this was brought in good

5    faith.  I don't think that is something that Mr. Donovan is

6    pursuing.  I think he's looking at it from the date of the

7    deposition when it became evident that Mr. Crawford had some

8    issues, the viability of his claim.

9         Now, we've all practiced law.  I've practiced law for

10   a long time as well almost exclusively on the plaintiff's side

11   and I can tell you that I had cases that looked really at the

12   initial conference, that looked good for a little while and

13   you take the deposition and you find out some things through

14   the assistance of a defense attorney that I didn't discover

15   and I have to reassess at that point whether it is a viable

16   claim, whether I have a different theory.  But there are cases

17   -- and I'm sure all plaintiff's lawyers can say this -- that

18   there have been cases where it goes south is the term I think

19   I used to use when the case doesn't bear out the viability

20   that I once thought it did.  I would sit down and talk to a

21   client about trying to get it resolved now, showing the

22   problems, refer it to another attorney to review, but in this

23   case I think the concern Mr. Donovan -- and frankly, my

24   concern -- is the decision just to press on.  I'm older than

25   most of you guys, but it used to be called kicking a dead

1    horse.  And when you found out at the deposition that your

2    client's testimony had some serious problems for whatever

3    reason, that is I think what Mr. Donovan is saying is that's

4    when there should have been a reassessment made and had it

5    been made and had you gotten another plaintiff, which I've

6    seen attempted at least, or some other simply dismissed his

7    lawsuit might have been an avenue instead, I think Mr. Donovan

8    is saying you continued and you pressed on all the way through

9    summary judgment.  Can you talk to that?

10           And I was particularly concerned about you were

11    saying that notwithstanding Mr. Crawford's testimony you

12    brought up the fact that while the real issue here is that it

13    represented to be lite, L-I-T-E, and that from an economic

14    analysis standpoint is where the lawsuit derives its

15    viability.  So I was looking particularly in your brief.  I

16    think you get into that on page four in some depth, the

17    financial injury being the form of an overcharge.  I wanted to

18    hear on that a little bit because I just want to give you a

19    heads-up on the way I'm looking at that is my recollection is

20    Mr. Crawford had testified that he wasn't even sure he ever

21    saw this label and the complaint was limited to this one

22    20-ounce label and forget the exhibit number off the top of my

23    head, but that's a concern of mine.  So I wanted to hear you

24    on that, because you start to kind of develop that argument on

25    page four but kind of end and I want to at least give you an

1    opportunity to elaborate on that if you wish.

2          MR. SHEEHAN:  Thank you, Your Honor, for those points

3    and I believe Your Honor is referring to page four -- you're

4    referring to the motion, the opposition to the attorney's fees

5    or the summary judgment?

6          THE COURT:  I'm sorry.  I should have been more

7    clear.  I'm looking at document 66, which is Plaintiff's

8    Memorandum of Law in Opposition to Defendant's Motion for

9    Attorney's Fees.

10         MR. SHEEHAN:  Okay.  Thank you.  Yes.  And here we're

11   talking about the financial injury, and I would submit that

12   the questions of the Defendant's counsel to Mr. Crawford

13   about, you know, what his valuation of the product I believe

14   that while I did not object to all of these I would say that

15   the testimony sought to elicit a legal conclusion from a lay

16   witness, but nonetheless, I believe that, yes, the testimony

17   makes clear that, yes, Mr. Crawford did indeed see the

18   product, it said lite, because every product that is the

19   Arnold Palmer Lite, whether it is in the 20-ounce version,

20   whether it is in a 22-ounce can or even in the half gallon or

21   gallon, it all says Arnold Palmer Lite.  It all says Arnold

22   Palmer half iced tea, and we alleged it was lacking, or at

23   least what Mr. Crawford saw specifically, the disclaimer which

24   I believe is not really that relevant here.  And on another

25   note I think that disclaimer is not particularly helpful.  And

1    I believe that while Mr. Crawford indicated how he was aware

2    of the sugar content and caloric content at some point, I

3    understand that he did testify to that.

4         However, as Your Honor noted, because lite can be and

5    is interpreted not just as an impression an absolute amount of

6    sugar and calories, the fact that anybody or Mr. Crawford

7    would have continued to purchase such a product represented as

8    lite, you know, his testimony that he became aware of the

9    sugar and caloric content is not dispositive at all because of

10   that and that's what has been alleged in the complaint and we

11   followed and been consistent with that theory throughout the

12   case, that lite has two understandings; relative amount of

13   sugar or calories, et cetera and absolute amount.

14        THE COURT:  My next question then is the materiality.

15   I found that there was a lacking materiality given the fact he

16   continued to purchase it.  In your mind does that touch on at

17   all as to your argument on the financial injury?  On '18 or

18   '19 is when I found -- even assuming he had been defrauded in

19   those years, '18 and '19, he continued to buy it in those

20   years following and I was trying -- from his own testimony.

21   And I was trying to determine maybe from you how that factors

22   in this.  If you can shed some light on why you persisted in

23   continuing the case.

24        MR. SHEEHAN:  Absolutely.  Yes, Your Honor.  He did

25   continue to purchase it, and also, I just want to emphasize

1     that even though he did admit that he learned about the sugar

2     and caloric content, he also thought it was a better option

3     than other options, and that's because he believed that it was

4     lite, which, you know, was a word that has a meaning that I

5     think most of us just instinctively and including that Mr.

6     Crawford believed it, that he believed that it was better than

7     other options, and I believe that that is something that we

8     expressed and made the points in our summary judgment motion,

9     and I can pull that up.

10          I know that we -- I am pulling this up right now, but

11    I think the deposition makes clear that he was seeking

12    something that was better than, you know -- better than, you

13    know, other options, a healthier alternative, wouldn't have as

14    many calories.  This is summary judgement motion ECF 36 at the

15    bottom of page ten and eleven.

16          So, yes, even if he was aware of the absolute number

17    of calories and the absolute number of grams of sugar, he

18    understood as he said in his deposition a healthier

19    alternative and a healthier drink.  And yes, it is true that

20    he continued to purchase it and it is also true that he

21    learned about the existence of what we believed to be the

22    deceptive claims from an advertisement.  That certainly

23    doesn't show any -- and I know that's not really what Mr.

24    Donovan alleges, but I will say that, yes, he did learn about

25    it from the advertisement and we believe that is how people

1   learn about whatever potential injuries that they suffered.

2   Now, we may chuckle to ourselves because we often think of

3   advertisements have you been injured in a car accident.  You

4   don't often see a billboard have you bought a one dollar iced

5   tea and lemonade, do you want to file a lawsuit?  But in

6   theory, you know, that is what it is.  But Mr. Crawford

7   continued to purchase it.

8           Did he know that lite was misleading, no, he

9   absolutely didn't.  There is always this sort of issue in

10  these type of cases about, well, does the plaintiff know that

11  something is misleading and almost always they don't.  And it

12  was after he learned that, wow, lite isn't what I think it is

13  is his realization and I think that testimony is borne out by

14  the deposition and it is a good-faith basis why this case

15  continued and, you know, we understand that.

16          THE COURT:  Okay.  All right.  Did you want to add

17  anything further, Mr. Donovan, because I somewhat derailed the

18  direction that you were going to kind of get to what I was

19  interested in specifically, and I don't want to cut you off.

20  Is there anything else you want to add?

21          MR. DONOVAN:  Your Honor, if I could respond.

22          THE COURT:  Mr. Donovan, just a moment.  I think I

23  used your name.  Mr. Sheehan, was there anything want to add

24  since I derailed your --

25          MR. SHEEHAN:  No, Your Honor.  I think you covered

1    everything and to the extent that anything wasn't covered I

2    think the papers by both sides I think pretty clearly

3    expressed the positions.

4         THE COURT:  If you want to respond, Mr. Donovan, go

5    ahead.

6         MR. DONOVAN:  If I could, Your Honor, I'll be brief.

7    I'll concede that Mr. Sheehan has been civil, as well as I

8    tried to be.  It has nothing to do with personalities.  I want

9    to get that out of the way.  This is not a motion that I'm

10   happy about bringing, Your Honor, okay.  Understand that.  But

11   in terms of what has been just discussed in deposition as for

12   the lite label, he was asked at some point, Plaintiff, prior

13   to 2018 you were buying the product not because of the lite

14   label; is that fair to say?  Answer:  That's fair.  That's at

15   page 87 line 22 through page 88 line one.  That's just another

16   example of an allegation being made in the complaint, Your

17   Honor, that is expressly contradicted by the Plaintiff's

18   deposition testimony.

19        And the reason I'm mentioning the Facebook

20   advertisements is this Plaintiff testified that he learned

21   about Mr. Sheehan in February of 2022 through a Facebook

22   advertisement and then the complaint was filed on

23   February 6th, 2022.  There could not have been some level of

24   investigation about the bonafides of the allegations in the

25   complaint.  And then during the deposition, it was shown that

1   these allegations were false.

2          And I would submit that -- and again, in the papers

3   we submit the action should have been dismissed there.

4   Vis-a-vis the value issue, Judge, the allegations in the

5   complaint are that the Plaintiff was willing to purchase the

6   product at a higher price.  The Plaintiff testified that the

7   price was good and fair and offered great value, another

8   example contradicting the allegations in the complaint.

9          With respect to evaluation there's never been any

10  report, never was a report on damages.  Plaintiff is taking

11  the position that that was subject to somehow expert opinion,

12  but that's a moot point, because no expert opinion was ever

13  offered.  There was no proof of any premium price and that

14  wasn't really the issue on summary judgment, so I think in my

15  view for all the reasons we've stated, Your Honor, there is

16  just grounds to grant the fees requested.

17         THE COURT:  You raised a point that I have in my

18  notes here that I was going to bring up with Mr. Sheehan

19  because I want to isolate a little bit, and that is the price

20  premium, the conjoint analysis that some courts have accepted

21  as a way to proving up this damage issue.  And I wanted to

22  raise that up separately because it concerned me a little bit

23  with a single defendant who said that it is questionable

24  whether he even read the label and that lite didn't factor

25  into it in his decision to purchase or not purchase this

1   particular product.  And I saw that you raised that again on

2   page four of your brief in response to the motion for

3   attorney's fees, Mr. Sheehan, and I wanted to give you an

4   opportunity to speak to that, not to try to sell me in the

5   idea that's an economic damage theory that should float, but

6   nevertheless how it would apply in this particular case such

7   that that is something you hang your hat on.  That is

8   something that you relied on when you decided to go ahead and

9   persist in this litigation, and I just want to give you an

10  opportunity to speak to that if you would.

11          MR. SHEEHAN:  Thank you, Your Honor.  And I just want

12  to understand what it is that Your Honor is getting at.  Yes,

13  we did, you know, in our class certification motion we

14  introduced an expert report.  Now, yes, a full damages price

15  premium study was not conducted.  That's not, you know,

16  disputed, but as to Mr. Donovan's point, we did propose or the

17  expert did a methodology sufficient to do it and there's a lot

18  of debate about whether, you know, you need to go ahead and do

19  the full price premium, et cetera, and courts have different

20  opinions on that, but I think, Your Honor, and Mr. Donovan is

21  asking -- at least I just want to understand, you're asking

22  about what is the relationship between, you know, Plaintiff's

23  testimony with respect to the label?

24          I believe that Mr. Donovan I think perhaps attempts

25  to isolate and cherry pick aspects of, you know, the

1    deposition transcript.  I think that Plaintiff always knew as

2    was cited in the opposition to the motion for attorney fees on

3    summary judgment that he knew it was lite according to the

4    label and at all times he believed it was healthy, but I am

5    sorry.  I don't want to get off track.  I want to address your

6    specific request, which if you could perhaps maybe -- I just

7    want to understand it a little bit better, Your Honor.

8         THE COURT:  I want to understand your thinking after

9    the deposition as to why you continued to persist and you

10   seemed to offer up again on page four of your brief in

11   response to the motion for attorney's fees, you seem to lay

12   some weight with the price premium damages calculations based

13   on conjoint analysis, and I'm struggling to understand if that

14   is, number one, a basis for your decision to go ahead and

15   press on and if so, how was that a legitimate basis or support

16   for your argument that the case should survive even through

17   summary judgment?

18        MR. SHEEHAN:  While we hoped that it would survive

19   through summary judgment and we believed that it should --

20        THE COURT:  Apart from hope, I'm looking for your

21   thinking at that time because it goes to the very issue that

22   is raised.

23        MR. SHEEHAN:  No.  I understand.  We did cite the

24   price premium calculations, the conjoint analysis, that's

25   correct, and I think the case that we cited I don't even -- I

```
 1   think in that case Newell -- I don't even think they ran the
 2   full price premium calculations in that case.  I think it was
 3   similar to what we did here, which was present a proposal.  I
 4   believe that that was also -- or at least Mr. Crawford's
 5   testimony was based on it was clear, even though he didn't
 6   know about the sugar content, how much sugar, how many
 7   calories, he thought it was a healthier drink, a better
 8   alternative.  And the complaint from the beginning talks about
 9   lite as having those two meanings, and that is supported by
10   something that the relevant regulatory agency, the FDA
11   acknowledged.  So we believe that we had a good-faith basis
12   even after the deposition because of the aspects where he said
13   it was a healthier alternative.
14        If they left us with nothing, Your Honor, then, yes,
15   of course I'm not going to persist, but, first, I knew that
16   Mr. Donovan's attempt to extract the lay witness's opinion on
17   damages about were you injured was notwithstanding
18   objectionable, but I knew it was an attempt to extract a legal
19   conclusion from a lay witness.  This is something that, you
20   know, he -- Plaintiff is not in a position to answer.  And
21   whether or not he paid a fair price, I think that that is a
22   sort of disingenuous question.  I think because -- that is not
23   a question, injury is something that he gets to determine.
24   That's for the Court to decide.  And I believe that testimony
25   based on the deposition transcript will show that he thought
```

1    it was a healthier product, a better choice.

2         And lastly, you know, the price premium damages

3    calculation based on isolating lite and the price premium

4    methodology that we laid out or was laid out through the

5    Matthews declaration focused on lite in bulk context so it is

6    not as though, for instance, that our price premium proposal

7    was limited to the aspect of the claim which could not be

8    supported anymore so that when Defendant's summary judgment

9    motion was made we could still and indeed did rely on our

10   expert proposal, the expert report with respect to how the

11   price premium could be conducted for lite claims, but lite in

12   the context of its relative caloric and sugar content.

13        THE COURT:  Mr. Donovan, for this motion is there

14   anything else you want to add?

15        MR. DONOVAN:  Yes, Judge.  I'll try to be as brief as

16   I can to address that.  The expert report of Dr. Matthews

17   wasn't offered in opposition to the summary judgment motion.

18   That was in the class certification motion, not on the merits.

19   In the *Benson* case, they relied on -- that is a class

20   certification motion and apparent from the decision there the

21   plaintiff's expert discussed composed conjoint analysis in

22   detail.  That didn't happen here.  There was a motion to

23   exclude Mr. Matthews' report and it was rendered moot by Your

24   Honor's decision on summary judgment, but that's all I have to

25   add, Your Honor.

1          THE COURT:  All right.  Let's move onto Mr. Sheehan's

2   I guess counter motion, that being the -- that's not a

3   fair terminology -- the motion for discovery expert fees.  It

4   is Document 63.  Mr. Sheehan.

5          MR. SHEEHAN:  Thank you, Your Honor.  Your Honor, I

6   don't like to make these motions, but actually I've never made

7   one and to tell you, you know, I made one here because my

8   approach is perhaps I guess without trying to take too much

9   credit or sound more noble than I think I am, somewhat

10  consistent with the American rule which generally says after a

11  lawsuit is over when at least in most instances when there's

12  no bad faith you go on your own ways.  You just say, okay,

13  here is money, that, yeah, I know I extended but the case is

14  over.  You lost.  And yes, while I could, you know, in theory

15  have sought these fees, you know, generally you don't do it

16  and I think, you know, I've had other cases even before Your

17  Honor where that is what happened.  And there's no requirement

18  that all defendants counsel and all defendants have that

19  approach, but, you know, this was a motion that I didn't even

20  like to do.  And even with respect to this motion on the

21  expert fees, I think I mentioned in the certification that I

22  asked Mr. Donovan if he would agree to cancel out the motion

23  here with their bill of costs.  I would have just said, okay,

24  let's cancel it and that was not accepted, which I think was

25  relatively wasteful.  And I would have been glad just to say,

1    okay, just forget about it.  But I think as Mr. Donovan is

2    seeking, you know, those fees, I think, yeah, well, if he's

3    going to do that then I'm going to have to do this.  I don't

4    normally like to do it because it is my belief that even if

5    Mr. Donovan didn't make this fee request I probably wouldn't

6    be here even though I would have a legal right under the rule

7    just because, you know, that's just, I don't know, leaves a

8    bad taste -- even when you win, I don't know, it is

9    inconsistent with the way I practice and just, okay, here is a

10   case and you expend money on it and that's very extraordinary

11   circumstances which I don't believe are present here and that

12   applies to Defendant's motion for attorney's fees.  It is not

13   something that you do and it is certainly not something that I

14   enjoy doing and I would happy just to call it a wash, you

15   know, but I think with respect to the arguments made I think

16   that those arguments are pretty clear.  I don't want to

17   reiterate those.

18          I think it is all there, but I just wanted to add my

19   sort of extrajudicial points about how I have never made this

20   motion before even though I saw that a lot of litigants have

21   and that's how I learned about it, and I didn't even know,

22   Your Honor, that that was something that you could do, to bill

23   the others -- I've heard about it and they always -- when I

24   did learn about it, I said, wait, the other side gets to pay

25   for the deposition?  I said that sounds weird but apparently

1    that's what it is.  I always just thought, you know, that is

2    part of the cost that plaintiff's side or whatever side bears

3    and whether or not that should be the case, I mean, I

4    understand why it isn't, but it is not something I've ever

5    availed myself.  So that's all I just wanted to say.

6              THE COURT:  Thank you.  Mr. Donovan, your response.

7              MR. DONOVAN:  Your Honor, for whatever it's worth,

8    Plaintiff's counsel keeps bringing up the fee motion.  The

9    Defendant had to show bad faith in order to get fees.  If a

10   Plaintiff wins on a consumer fraud statute, I would fall over

11   in a state of shock that the Plaintiff didn't move for fees.

12   So with respect to the expert fee motion, it is untimely, Your

13   Honor.  If I filed our motion for fees, our bill of cost

14   beyond the time set forth in the local rules more than likely

15   I would be ruled time barred.  We did not.  This motion for

16   fees was filed 31 days.  I acknowledge Plaintiff counsel's

17   candor.  He admitted this motion was retaliatory and if deemed

18   not untimely certainly the issue of whether or not there's

19   been bad faith is interwoven into how and whether in the

20   quantum of how much is owed.

21             We would acknowledge that the rules say that if you

22   depose the other expert you have to pay.  I was never notified

23   of that demand until it is in the record, Your Honor.  I think

24   it was well after these initial motions were filed, and if we

25   then move along we've set forth how that fee ought to be

1    reduced in the event that it is granted, Your Honor, and I

2    would just rely on the papers.

3          THE COURT:  Anything in response, Mr. Sheehan?

4          MR. SHEEHAN:  I know that he described it as

5    retaliatory.  I don't necessarily disagree, only to the extent

6    that I believe the motion for attorney's fees was somewhat

7    retaliatory, but I shouldn't even have said that.  So I think

8    everything is in the papers.

9          THE COURT:  All right.  We covered a lot of ground.

10   I know I want to make sure everybody is given the opportunity

11   to speak on this if they wish.  Is there anything you want to

12   address regarding anything that is pending presently, Mr.

13   Sheehan?

14         MR. SHEEHAN:  You know, Your Honor, I should -- I

15   don't know if Mr. Donovan mentioned this previously, but of

16   the other cases that Mr. Donovan cited in, you know, as part

17   of the deterrence factor, I think there was one in California

18   and one in Florida, I believe, that two of those have been

19   dismissed, one by an order of the court and another one by the

20   plaintiff's counsel.  So to the extent that Mr. Donovan or the

21   Defendant's motion was based on having the deterrent effect of

22   those other actions which they said besieged their client, I

23   think the courts are addressing those other cases, they have,

24   and that's something that I just wanted to bring to the

25   Court's attention.

1          And Mr. Donovan, if you wish to, I don't mind, I

2     don't believe I mischaracterized anything, but no problem with

3     you getting the last word.

4          THE COURT:  Mr. Donovan, anything further?

5          MR. DONOVAN:  Before I address that, Judge, there is

6     that bill of cost that we filed that is obviously -- counsel

7     is correct, *Miller* was dismissed in June for failure to state

8     a viable claim in California.  *Hoffman* was just recently

9     voluntarily dismissed.  *Dorsey* remains pending a motion to

10    dismiss -- remains pending, but I also want to alert the

11    Court.

12         I didn't mention this because -- I was going to but

13    because counsel has mentioned other cases, there were other

14    cases before this case before Your Honor filed, one of which

15    was filed in this district by counsel, didn't deal with the

16    Arnold Palmer Lite, the other case was *Hancock*, and there were

17    two other cases in other districts, one of which involved the

18    Arnold Palmer Lite.  I am only mentioning this because it is

19    not just three cases, Judge, and in those other three cases,

20    *Hancock*, *Schrode* and *Prater*, the Plaintiff filed and then

21    after motions to dismiss were filed dismissed the claims, but

22    I am only adding that as background, Your Honor, that it is

23    not just the three that we mentioned.

24         THE COURT:  All right.  Very good.  I did not forget

25    the bill of costs, but it seemed that was I think well

1    briefed.  I don't know, if anybody wants to speak to that,

2    they may, but I think I can take that one on the papers.  Is

3    there anything else anyone wants to address before we close

4    out for the day?

5            MR. SHEEHAN:  Nothing, Your Honor.

6            MR. DONOVAN:  Nothing, Your Honor.  Thank you for

7    your time.

8            THE COURT:  Give us some time to delve into this in

9    some depth.  I want to tell you that I spent a fair amount of

10   time on this last night and this morning, and Mr. Sheehan, I

11   have my concerns.  I was thinking back over my judicial career

12   of about seven and a half years now that I can only think of

13   one time where I awarded attorney's fees and it was absolutely

14   egregious behavior and I was a state court judge then even,

15   but I was concerned here -- and I'll tell you up front that I

16   wrote the memorandum and order that is Document 55.  I seldom

17   do that, write these things myself.  I often -- I have some

18   very talented law clerks and I am smart enough to realize

19   they're in some instances smarter than me and better writers,

20   but in this case I wanted to get into it and try to understand

21   what happened so I thought the best way to do that is take

22   that file and do the writing with myself.

23           What I'm concerned with, Mr. Sheehan, and this is the

24   thing that is kind of rambling around in my brain is just the

25   decision to press on.  And I think Mr. Donovan, if I

1    understand Mr. Donovan's motion and I think I do, is that his

2    concern is that from that date of the deposition forward on

3    the attorney's fees, I'm happy that he does that because I

4    would not have considered very much that way of bad faith from

5    the date of filing up to that time, but I want to alert you

6    that I do have my concerns about the factorial analysis that

7    I've done in my mind so far and it tends to lean toward that

8    there might well have been bad faith.  I'm not suggesting by

9    any stretch that you set down one day and decided to commit

10   some dastardly deed.  I don't think it rises to that level,

11   but I think my concern for you, Mr. Sheehan, in this

12   particular case is that more should have been done to assess

13   this case, in particular Mr. Crawford and the viability of the

14   case, and this obviously cost a lot of money for Defendants to

15   defend these things.

16         I wanted to give you that off-the-top-of-my-head

17   analysis, but we will get a more in-depth analysis in the near

18   future for you, something you can read and kind of decipher at

19   that point.  All right?  Everyone, thank you for the good

20   work.  I appreciate it.  We'll get you a response as soon as

21   we can.

22

23

24

25

```
 1                      REPORTER'S CERTIFICATE

 2                  *   *   *   *   *   *   *

 3     I, Erikia T. Schuster, RPR, Official Court Reporter for the

 4   U.S. District Court, Southern District of Illinois, do hereby

 5   certify that I reported with mechanical stenography the

 6   proceedings contained in pages 1-27, and that the same is a

 7   full, true, correct and complete transcript from the record of

 8   proceedings in the above-entitled matter.

 9

10   /S/ Erikia T. Schuster            7/25/2024
     IL CSR, RPR
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```