**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| KENNETH CRAWFORD, individually and on behalf of all others similarly situated, )<br><br>Plaintiff, )<br><br>vs. )<br><br>ARIZONA BEVERAGES USA LLC, )<br><br>Defendant. ) | Case No. 22-cv-220-DWD |

## MEMORANDUM AND ORDER

**DUGAN, District Judge:**

Plaintiff Kenneth Crawford brought this putative class action against Defendant AriZona Beverages USA, LLC for the alleged deceptive and misleading labeling of its 20oz "Lite Arnold Palmer" beverage. Plaintiff sought monetary damages and injunctive relief for unfair business practices and deceptive advertising in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. Ann. 505/1, *et seq.* ("ICFA") and unjust enrichment. On March 30, 2024, the Court granted Defendant's Motion for Summary Judgement. (Doc. 55) Now before the Court is Defendant's Motion for Attorney's Fees (Doc. 59) and Plaintiff's Motion for Discovery Expert Fees (Doc. 63).

## I.    BACKGROUND

Defendant manufacturers the 20oz Lite "Arnold Palmer" beverage (the "Product"). Plaintiff originally claimed that, between January 2021 and January 2022, he purchased the Product from a third-party on one or more occasions in Caseyville, Illinois

1

(Doc. 1, ¶¶ 66-73).  Below is an image of the Product label as set forth in Plaintiff's Complaint:



(Doc. 14-3, p. 2).

Plaintiff claimed in his Complaint that the label contains at least four false or misleading representations. The first two representations concern Defendant's use of the word "Lite."  Plaintiff claimed the use of the word "Lite" is misleading because the reasonable consumer would understand the term to mean that the Product is low in both sugar and calories, or lower in sugar and calories than other products.  However, Plaintiff alleged that the Product is neither low in sugar or calories, but instead would qualify as a "high" sugar product under comparable FDA regulations and contains a similar number of high calories to that of a can of soda (Doc. 1, pp. 5-6).  Plaintiff also complained that the label fails to identify a "reference food" so that consumers can compare the Product's "lite" claim to that of another representative product with higher nutrient values in accordance with FDA regulations (Doc. 1, pp. 6-7).

Plaintiff further alleged that he was damaged because he paid a premium for the Product, believing it to be low in sugar and calories, and lower in sugar and calories than comparable beverages (Doc. 1, ¶ 77). Plaintiff claimed in his Complaint he would not have purchased the Product if he knew the representations and omissions were false and misleading (Doc. 1, ¶ 78). Alternatively, he would have paid less for it.

Defendant sought summary judgment in its favor pursuant to Rule 56. Defendant asserted in support that Plaintiff cannot prove causation, deception or damage under ICFA for four reasons: First, Plaintiff could not confirm at deposition that he purchased the product with the label identified in the Complaint; Second, that Plaintiff continued to purchase the product even after forming the belief that he had been deceived; third, he preferred purchasing the 23 ounce cans of the product over the 20 ounce cans at issue here and would only purchase the latter when the former was not available; and fourth, that no damages can be proven because the Plaintiff testified that the product was the best product, was the best value and was sold at a fair price. (Doc. 33, p. 2).

In Plaintiff's response to the Motion for Summary Judgment he stated: "Plaintiff withdrawals [sic] all claims in regards to any label statement other than "Lite"." (Doc. 36, 5). And, in a following footnote references his Motion for Class Certification (Doc. 32, 1) where he "chose to waive multi-state claims arising under consumer fraud acts of" all states but Illinois. *Id.* Consequently, and as was discussed in this Court's Memorandum and Order granting the summary judgment motion, (Doc. 55) Plaintiff did not address much of the argument Defendant made for summary judgment in its favor. Rather,

Plaintiff focused on his testimony regarding his purchases of the product for the proposition that he was misled by the label indicating that it is "Lite".

Plaintiff did not seek review or reconsideration of this Court's decision to grant the Defendant's Motion for Summary Judgment. But Defendant did file its Motion for Attorneys Fees alleging generally that the Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS 505/1, et. seq., permits, and in this case, warrants the imposition of fee shifting for the benefit of the "prevailing party", Arizona Beverages. (Doc. 59)

## II.    Legal Standards

Defendant seeks attorneys' fees solely under 815 ILCS 505 10a(c) which provides:

" … in any action brought by a person under this Section, the court . . . may award, in addition to the relief provided in this Section, reasonable attorney's fees and costs to the prevailing party." IL ST CH 815 § 505/10a(c). The term "prevailing party" encompasses a prevailing defendant, as well as a prevailing plaintiff. *Krautsack v. Anderson*, 861 N.E.2d 633, 647 (Ill. 2006) (Citations) But prevailing Plaintiffs and prevailing Defendants are not treated equally for the purposes of recovery of attorneys' fees. "We conclude that a bad-faith requirement for fee awards to a prevailing defendant, without a corresponding bad-faith requirement for fee awards to a prevailing plaintiff, is consonant with the purposes of the Consumer Fraud Act." *Id* at 560. Accordingly, a prevailing defendant, unlike a prevailing plaintiff, has an additional burden of demonstrating that the plaintiff acted in bad faith in the prosecution of the suit. "Thus, where a prevailing defendant petitions the trial court for a reasonable attorney fee under section 10a(c), only if the trial court makes a threshold finding that the plaintiff acted in bad faith should the trial court consider other circumstances relevant to its exercise of discretion." *Id* at 559-560.

The Illinois Supreme Court has determined that when assessing "bad faith" courts should consider and be guided by "Rule 137, and the body of case law that has developed around it." *Krautsack,* 861 N.E.2d at 648.[1]

 Rule 137 provides in relevant part:

> The signature of an attorney or party [on a pleading, motion or other paper] constitutes a certificate by him that he has read the pleading, motion or other paper; that *to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact* and is warranted by existing law or a good-faith argument for the extension, modification, or reversal of existing law, and that it *is not interposed for any improper purpose, such as* to harass or to cause unnecessary delay *or needless increase in the cost of litigation*. * * * If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, may impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of reasonable expenses incurred because of the filing of the pleading, motion or other paper, including a reasonable attorney fee."

Ill. S. Ct. Rule 137 (emphasis added).

The purpose of Rule 137 is to "prevent abuse of the judicial process by penalizing claimants who bring vexatious and harassing actions." *Sundance Homes, Inc. v. County of DuPage,* 746 N.E.2d 254, 271 (Ill. 2001). At the same time, its purpose is not "to penalize litigants and their attorneys simply because they were zealous but unsuccessful." *Toland v. Davis*, 693 N.E.2d 1196, 1200-1201 (Ill. App. Ct. 1998). Because of the penal nature of the Rule, courts must construe it strictly, must ensure the moving party has proven each element of the alleged violation with specificity, and should reserve sanctions for the most egregious cases. *US Bank Tr., N.A. as Tr. for LSF11 Master Participation Tr. v. Burnett*, 194 N.E.3d 548, 559 (Ill. App. Ct. 2021).

---

[1] The Illinois Supreme Court, however, rejected the contention that bad faith in the context of the Consumer Fraud Act is coterminous with bad faith under Rule 137. In so holding, the court explained that, "[b]ecause Rule 137 addresses the pleadings, motions, and other papers a litigant files, the rule does not provide a sanction against all asserted instances of bad-faith conduct by a litigant or the litigant's attorney during the course of litigation." *Krautsack*, 861 N.E.2d at 648. Therefore, while Rule 137 and related case law provide "useful guidance," Rule 137 does not constrain a prevailing defendant's ability to establish bad faith. *Id*.

Moreover, an attorney has a duty to dismiss a lawsuit when it becomes clear that it has no viable basis. *In re Estate of Hanley*, 995 N.E.2d 596, 614 (Ill. App. Ct. 2013).

### III.     Discussion

### Defendant's Motion for Attorney's Fees

Defendant claims that the Plaintiff pressed forward with his litigation despite it becoming evident that his own testimony was contrary to the allegations contained in the Complaint. In the Complaint, Plaintiff alleged that the "value of the product that Plaintiff purchased was materially less than its value as represented by Defendant." (Doc. 1 ¶54). Plaintiff also based his allegations on one specific product label (among many the Defendant sold) identified in the Complaint. However, the Plaintiff's testimony demonstrated that despite learning the sugar and caloric content of the product he continued to buy it because he liked it and it was "a great value, quenched his thirst and had a pleasing taste." He also testified that he thought the product price "was a fair price." (Doc. 55, P. 9).

Moreover, it appeared from his testimony that there was no real indication that Plaintiff ever saw the product label that provided the basis for the lawsuit. (Doc. 55, P.8-9). Initially, at least, he testified to seeing and purchasing weekly Defendant's product bearing document P-11, which is the only label identified in his Complaint. (Doc. 33-2, P.95-96). But Defense Counsel brought to the attention of the Plaintiff that Document P-11 actually references a 20 ounce product not the 23 ounce he purchased.

Q. Did you ever purchase a product bearing that label?
A. When you break it down to the ounces I cannot confirm that.

6

Q. So, do you know?

A. No

Q. So is it fair to say the only products that you know for sure you purchased were
the gallon container, the P-9, and the 23 ounce P-5, is that fair to say?

A. No. That's not fair to say.

Q. Okay. What other containers do you remember purchasing?

A. Again, there a bottle that's labeled $1.00 that just a little larger than this water
bottle sitting in front of me.

Q. And you don't know whether or not it was 20 ounces?

A. I think water bottles are, what, something like 16 ? It probably was 20 ounces.

Q. Sorry?

A. It could have easily been a 20 ounce bottle.

Q. You don't know?

A. No.

(Doc. 33-2, P. 98-99).

Defendant also draws attention to the Plaintiff's Interrogatory Responses in which
he indicates that "Plaintiff purchased a large sized version of the product weekly . . . at a
price between $1-$2.50." (Doc. 33-3, P. 2-3). At his deposition, Plaintiff indicated that the
product he was referring to in his Interrogatory Response was a 23 ounce can of the "Lite
Product" identified as Exhibit P-5. (Doc. 33-2, P. 67-69; Doc. 33-4). He said that he
purchased the 23 ounce can because "[t]hey are larger" and a better value. (Doc. 33-2, P.
64). However, it was undisputed that the label used on the 23 ounce can (Exh. P-5) is not
the subject of the Complaint.

Plaintiff was then shown another 20-ounce Arnold Palmer Lite Product (Exhibit
P-12), and he indicated that he would buy that product only when the cans were not

available. (Doc. 33-2, P. 101). Exhibit P-12 (Doc. 33-7) also depicts a 20-ounce plastic bottle and is clearly dissimilar to the Exhibit P-11, which is the subject of the Complaint. Defendant claims this is critical in that P-12 does not have the dual column serving size format, the statement about calorie content, or the sugar statement claimed actionable. (Doc. 33, P. 22).

Plaintiff asserted in response to the Defendant's Motion for Summary Judgment and argued during the hearing on the Motion for Sanctions that the Plaintiff's confusion over labels, and his continuing to purchase the product despite its misleading labels, is not important and that what is important is the allegedly "deceptive statement of the misleading relative claim of "Lite".  (Doc. 36, P. 10; Doc. 75, P. 19)). Plaintiff also resorts to claiming that he persisted in pressing the case forward even after the Plaintiff's deposition because the question that resulted in his testimony about his continued purchasing of the product despite learning of the caloric and sugar content was an objectionable question on the grounds that it was an attempt to illicit a legal conclusion from a lay witness. (Doc. 75, P. 18-19). During argument on the present motion, Plaintiff's Counsel suggested that his thinking was that he had an "expert proposal" in the Matthews Declaration that "price premium damages calculation based on isolating lite and the price premium methodology" and that the "price premium proposal was limited to the aspect of the claim which could not be supported anymore such that he could continue to rely on the expert proposal." [2]  (*Id*.).

---

[2] Plaintiff's expert's testimony was offered in conjunction with Plaintiff's Motion to Certify Class and not in response to the summary judgement motion. Nevertheless, Ms. Matthews was "asked to present the

### A. The Necessity of Actual Damages Under ICFA

By the text of the statute, the suffering of actual damages in the form of a pecuniary loss is an essential element to a ICFA claim. See 815 ILCS 5/505 10(a). See *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) ("Actual damage" in this means the party must have suffered actual pecuniary loss.); *Mullen v. GLV, Inc.*, 37 F.4th 1326, 1330 (7th Cir. 2022) ("Illinois Consumer Fraud Act does not require a plaintiff to show reliance but does require the plaintiff to show that a fraud proximately caused injury."). See also *Avery v. State Farm Mut. Auto. Ins. Co., 835 N.E.2d 801 (Ill. 2005)*.

But Plaintiff does not argue that he suffered actual damage. Nor does he now contend that he was misled by the Product's label except to say that it contained the word "Lite". Instead, he claims his expert would testify that a price premium analysis of the value a selected group of consumers would place on the Product given their belief of the meaning of "Lite" would demonstrate damages. (See Doc. 32-3, ¶19, 174). Even assuming that there is a group of Illinoisans who suffered damage because of their perception of the label in question caused them to a pay a higher value because of the label's use of the term "Lite", Plaintiff is not a member of that group. Reason dictates that just as an individual who never buys the product cannot be a member (never mind the representative plaintiff) of the class because he has not suffered an injury, neither can a

---

methodology we would use if requested to conduct a price premium analysis on the value consumers would place on the product if were a low calorie and low sugar product". (Doc. 32-3, ¶19) The conclusion reached by Plaintiff expert included a finding that "[o]verall, the survey indicates about half of the target market for Defendant's Product believes that the product contains fewer than 80 calories, and that 70% or more of the target marketing for Defendant's Product believes that the product contains less than 18 grams of sugar. (Doc. 32-2, ¶ 174)

party who, despite actual knowledge of the price, sugar content and caloric value, buys the product anyway because of his fondness of it, cannot be a member of the class. Neither suffered actual injury and neither is entitled to recovery under ICFA.

The Plaintiff by asserting a statistical inference of damage without actual damage is not exactly entering onto unfurrowed ground. Over 15 years before this case was filed, the Illinois Supreme Court specifically rejected "specification damages", that is, a theory whereby loss occurs when a non-OEM automobile part simply by specifying it on an estimate, even though that non-OEM part was never installed, and the consumer suffered no actual damages. *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 830 (Ill. 2005). In *Avery*, a class representative Plaintiff sued State Farm claiming that he had be damaged by (1) merely specifying that non-OEM parts would be used and (2) actual use of non-OEM parts. The Plaintiff testified he sold to his brother-in-law for market price a truck that had been repaired with non-OEM parts. That plaintiff went on to say that the repair with non-OEM parts did not factor into the sale price. *Id.* at 859. The Court found that "[plaintiff] suffered no "actual damage" as a result of State Farm's specification or use of non-OEM parts and, therefore, he cannot recover under the Act." *Id.* Further, it stated: "[plaintiff] failed to prove a private cause of action under the Consumer Fraud Act. Because [plaintiff], as the representative plaintiff, has not proven his claim for consumer fraud, there can be no Illinois class for plaintiffs' consumer fraud count." *Id* at 863.

Plaintiff's lack of being a defrauded customer and having not suffered actual injury likewise made him a poor class representative and effectively destroyed his claim and possibly the claims of those, if any, who were actually misled and injured by the

10

Defendant's labeling. Possibly a substitute for Class Representative could have cured this, but Plaintiff's Counsel made no effort to replace Plaintiff even after his deposition testimony. Nevertheless, Plaintiff, though empty handed, pressed his case forward in opposition to the Defendant's Motion for Summary Judgment. In the end, Defendant became the "prevailing party".

## B. Illinois Supreme Court Rule 137 and Bad Faith

Rule 137 provides guidance as to whether "bad faith" exists and, by its terms, requires that a claim be "well-grounded in fact" not solely in expert's proposed opinions. Here, whatever reasonable belief Plaintiff might have had that he was a defrauded customer or suffered actual damage from Arizona Tea's labeling, disappeared with his own testimony. There is little room for the conclusion that the Plaintiff, by his Counsel who is a highly experienced ICFA class action lawyer, in persisting toward class certification and aggressively opposing summary judgment even after hearing his client's testimony, had a reasonably-formed belief that the Plaintiff's claim was "well grounded in fact" and "warranted by existing law."

Plaintiff's arguments seem to suggest an equivalency between "bad faith" and "bad intentions". (Doc. 66, P. 4, citing *Wetzler v. Illinois CPA Soc'y & Found. Ret. Income Plan*, No. 07-1326, 2008 WL 11366178 (C.D. Ill. Dec. 11, 2008) ("contrary to the aspersions cast by Defendants, the Court is not aware of anything suggesting that the litigation was brought in bad faith or for purposes of harassment."). The terms are not synonymous. While "bad intentions" in pursuing litigation, such as to harass an opponent, is the

11

penultimate goal of Rule 137, "bad faith" conduct doesn't necessarily require bad intentions. Counsel likewise insisted at argument that he maintained civil decorum during the entirety of the case, and the record reveals nothing to the contrary. But the adherence to good professional etiquette and protocol, while admirable, does not dictate whether bad faith exists under Rule 137.  In fact "[i]n a determination of whether to impose sanctions, it is not sufficient that the party honestly believed his or her case was well grounded in fact or law. *Whitmer v. Munson*, 781 N.E.2d 618, 628 (Ill. App. Ct. 2002). Rather, an objective standard is to be employed in evaluating what was reasonable under the circumstances. *Dunn v. Patterson*, 919 N.E.2d 404, 412 (Ill. App. Ct. 2009) citing *Baker v. Daniel S. Berger*, Ltd., 753 N.E.2d 463, 469 (Ill. App. Ct. 2001). Thus, a finding of bad faith under Rule 137 does not require a determination that the party acted with malice or virulence while such character, if present, would certainly seem to be an important consideration in determining whether there was "bad faith."

The Plaintiff's conduct warrants a finding that he acted in violation of Rule 137 and the Court does find that he acted in "bad faith" for the purposes of Section 10a(c). In so finding, the Court does not do so lightly or without having given extensive consideration. At the same time, it is quick to acknowledge that it is not uncommon for a particular injury case to encounter a need to be refined, adjusted or even overhauled during the course of litigation, often the result of more robust post-filing investigation or what is learned during the discovery process. Seldom do cases look the same at initiation as they do following discovery, possibly suggesting a need for an amendment for a new theory or discovered facts or abandonment of a claim, all claims or class representative.

To penalize a party or his attorney for making such adjustments when necessary and when done in a timely fashion would be inappropriate and contrary to general jurisprudence. But here, Plaintiff pressed onward with his claim despite what should have been seen as an unsurmountable obstacle to recovery and ignored opportunities to either exit by agreement, dismissal or substitution with a class representative who has suffered actual injury.

### C. The Imposition of Sanctions

Having addressed the threshold issue of "bad faith" for the purposes of Rule 137, the Court is tasked with determining whether to impose sanctions. The Illinois Supreme Court has identified several factors or criteria a trial court may consider when ruling on a fee petition under section 10a(c). These factors include, but are not limited to, "(1) the degree of the opposing party's culpability or bad faith; (2) the ability of the opposing party to satisfy an award of fees; (3) whether an award of fees against the opposing party would deter others from acting under similar circumstances; (4) whether the party requesting fees sought to benefit all consumers or businesses or to resolve a significant legal question regarding the Act; and (5) the relative merits of the parties' positions." *Krautsack v. Anderson*, 861 N.E.2d 633 (Ill. 2006)**.** The question of whether to award attorneys fees under Section 10a(c) is within the sound discretion of the trial court. *Washington Courte Condo. Ass'n-Four v. Washington-Golf Corp.*, 643 N.E.2d 199, 222 (Ill. App. Ct. 1994).

The Court has already addressed the facts in this matter that support a finding of bad faith. Specifically, the Plaintiff, after disclosing through his testimony the lack of

materiality, proximate cause and damages, nevertheless sought class certification and opposed the Defendant's Motion for Summary Judgment. True, the Plaintiff sought to abandon some claims through a footnote in his brief or simply by not addressing the entirety of the Motion, but voluntary dismissal of existing claims must be done with leave of court on motion. (See Rule 41(a)2 Fed. R. Civ. Proc.) Plaintiff did not effectively dismiss any claim which resulted in the Defendant being left with no option to but defend itself against all claims, thereby unnecessarily incurring costs and fees. While the Court is not aware of anything in the record that suggests that Plaintiff or his Counsel necessarily intended to act perniciously or banefully when they persisted in the litigation, at best, Plaintiff acted willfully in turning a blind eye toward the obvious. And, no one else is culpable for the consequences in managing the litigation in the manner reflected in the record.

Defendant believes that the deterrence factor weighs in favor of granting fees because such an award of fees "would likely serve to chasten others from bringing suspect food labeling claims and clogging the Court's docket." (Doc. 59, P. 10) Defendant then points to three other cases where Plaintiff's Counsel is representing clients against Arizona Tea. (Doc. 59, P. 11) However, this Court did not reach the question whether others who bought an Arizona Tea product were misled by the labeling, and there may be individuals with viable claims much like that Plaintiff asserted. So, Defendant's argument cuts too wide a swath. And, because the Defendant does not specifically advance the argument of "multiplicity" of filings or litigation under 18 U.S.C.A. 1927, the existence of other pending matters should not be used to define the scope of this

Memorandum and Order.[3] Rather, any award of fees for bad faith here should be viewed to deter only those who obdurately and needlessly perpetuate lawsuits when the evidence is devoid of the existence of actual damages.

While the Defendant did not base the present motion on either Rule 11 or Section 1927, discussion of those provisions might highlight the need for deterrence. The counterpart to Illinois' Rule 137 is, in some respects, Federal Rule 11(b). The two are well aligned. When Rule 11 is read literally as pertaining only to pleadings, motions and other papers, it does not require an attorney to reevaluate the merits of the case as it develops. But, "[a]s a practical matter Rule 11 requires lawyers to evaluate their case in light of new developments because they are forever filing papers, all of which must be adequately investigated and supported." *Samuels v. Wilder*, 906 F.2d 272, 275 (7th Cir. 1990). Section 1927 provides that an attorney "who ... multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Both of these provisions are tempered in one aspect by recognition that a litigant is not required to surrender in the face of defeat. *Id.*

So, when the Plaintiff responded to the Defendant's Motion for Summary Judgment, he attempted, unsuccessfully, to abandon a certain claim by stating in a footnote to his Memorandum of Law in Opposition, "Plaintiff withdrawals (sic) all claims

---

[3] The Court is aware of the numerous lawsuits filed by Mr. Sheehan in not only this district but in several others. It is also aware of some of the comments and admonishments made toward him about the filing of some of those actions. Neither the existence of those other lawsuits nor the comments and admonishments figure into the Court's finding of bad faith or during the analysis of the factors.

in regards to any label other than "Lite"". (Doc. 36, P. 5) It is unclear whether Plaintiff reevaluated his claims in the months between the Plaintiff's deposition and the filing of the summary judgment motion. As a result of Plaintiff's conduct, the Defendant had no option but to address and defend against those claims that Plaintiff would eventually attempt to abandon. Seemingly, only with summary judgment looming did he start the attempt to pare away claims. Still, he persisted in advancing the ICFA claim that had no chance of succeeding and further prolonged litigation. See *Avery*, supra.  In one respect, Rule 11, which addresses the filing of papers, might have no application to the Plaintiffs *failure* to file a pleading, such as a motion for leave to amend, a motion to substitute plaintiffs or a motion for voluntary dismissal. Yet, in another, Rule 11 would seemingly directly addresses the Plaintiff's filing of papers to persist in a clearly unviable claim. On the other hand, Section 1927 allows for sanctioning of "objectively unreasonable" conduct. *Id* at 275. While the Defendant's motion is based solely on Section 10a(c) and Illinois Rule 137, it is illuminating that Plaintiff's conduct might also be proscribed by both Rule 11 and Section 1927. And, although this matter presents unique circumstances, there is certainly deterrent value for those who contemplate engaging in similar conduct that there exists a variety of motivations, if not duties, to revaluate their claims as new evidence become available. If such deterrence would be realized, then benefit to those defendants who face frivolous allegations of ICFA violations would be realized as well.

### D. Reasonableness of and Ability to Pay Attorney Fees

Defendant claims $154,862.50 "for attorneys' fees incurred in defense against Plaintiff's claims following the period after Plaintiff's deposition, through the end of

January, 2024." (Doc. 59, 14-15). Defendant also claims $947.95 in expenses for computerized legal research. (Doc. 59, P. 15). The Plaintiff does not raise any contest to the reasonableness of the hourly rates charged nor the time expended by Defendant's attorneys. Likewise, neither Plaintiff nor his Counsel addressed  or offered evidence of their respective abilities to satisfy an award of attorneys' fees.

Defendant points to Section 7 of the Plaintiff's retainer agreement with his attorney which provides that his attorney will pay on his behalf all legal costs and expenses incurred in the case. (Doc. 59, P. 9-10). Defendant claims that the retainer agreement provides any award of counsel fees and costs in its favor would be the obligation of the Plaintiff's Counsel, not Plaintiff. (Doc. 59, P. 10). Plaintiff's entire argument in response consists of less than two paragraphs and does not squarely address the question of the ability of either Plaintiff or his Counsel to pay an award of fees and costs. It is the obligation of the party and his counsel to raise arguments in response to adversarial motions. When they fail to do so, any such argument is waived. See *G & S Holdings LLC v. Continental Cas. Co.*, 697 F.3d 534, 538 (7th Cir. 2012) ("We have repeatedly held that a party waives an argument by failing to make it before the district court."). Therefore, the Plaintiff has effectively waived all argument regarding the reasonableness of, and Plaintiff's ability or inability to pay, counsel fees and costs.

### E. The Societal and Legal Benefits.

The Parties do not directly address the remaining factor, that is: whether the Defendant sought to benefit all consumers or businesses or to resolve a significant legal question regarding the Act. There is nothing in the record that would suggest that the

Defendant's arguments in this matter were designed to have highlighted or have resolved societal concerns or benefits beyond having the case against them dismissed. Accordingly, this factor bears no weight in the analysis.

However, the Court does find that, when considering all of the applicable factors, the Plaintiff's conduct in this case warrants an award of fees in the amount of $154,862.50 and expenses in the amount of $947.95.

### Plaintiff's Motion for Expert Fees

In support of class certification, Plaintiff proffered as expert witness Andrea Matthews, Phd. She produced a report. Approximately 7 months following the Plaintiff's deposition, Dr. Matthews was tendered for deposition. (Doc. 63, P. 6). Plaintiff now seeks reimbursement for her fees and associated expense under Rule 26(b)(4)(E). (Doc 63.) It provides in pertinent part: "Unless manifest injustice would result, the court must require that the party seeking discovery . . . (i) pay the expert a reasonable fee for time spent in responding to discovery under Rule 26(b)(4)(A) or (D) . FRCP Rule 26. Rule 54(d)(1) provides: "Unless a federal statute, these rules, or a court order provides otherwise, costs--other than attorney's fees--should be allowed to the prevailing party." FRCP Rule 54.

### A. The Timeliness of Plaintiff's Motion for Expert Fees

While neither Rule 26 nor Rule 54 designate a window of opportunity for submission of bills of costs, the Local Rules of this Court do: "Unless separately authorized by federal statute, a request for costs must be filed no later than 30 days after the entry of judgment."  SDIL-LR, 54(c). Plaintiff does not point the Court to any federal

statute that provides for a "separately authorized" period of time in which submission of bills of costs must be submitted. Defendant argues that the Plaintiff's Motion for Expert Fees was not timely filed and therefore, barred. (Doc. 70, P. 1) The Court agrees.

"Because Fed.R.Civ.P. 54(d) specifies no deadline for filing a bill of costs, the time for filing such a bill is normally governed by local rules." S.*A. Healy Co. v. Milwaukee Metropolitan Sewerage Dist.*, 60 F.3d 305, 307 (7th Cir. 1995). Judgment was entered in this case on March 30, 2024. (Doc. 56). Plaintiff did not file his Motion for Expert Fees until April 30, 2024, just one day past the deadline to file that motion.

Plaintiff nevertheless contends that his motion was based upon Rule 26(b)(4)E and not Rule 54(d)(1). He refers to several cases in support of his proposition that Rule 54 does not provide for a time limitation that would affect Rule 26. However, the Plaintiff's reliance on those cases is misplaced. The Plaintiff relies on *SP Technologies, LLC v. Garmin International, Inc.*, 2014 WL 300987, (N.D.Ill., 2014) where, very much like here, the defendant "Tom Tom" was a prevailing party on summary judgment and sought to recover expert fees after the judgment had been entered. However, there the court found that TomTom sought "expert fees pursuant to Fed.R.Civ.P. 26(b)(4)(E), which are recoverable as costs under Rule 54(d)." *Id*. at *7. *SP Technologies* does not help Plaintiff.

Plaintiff also points to *Advanced Video Technologies, LLC v. HTC Corp.*, 2016 WL 1253899, (S.D.N.Y., 2016). However, the question there was whether the prevailing defendant "waived" the right to recover under Rule 26 if he waited until after entry of the judgment order to file an application for fees. The Court found that nothing in Rule 26 requires a party to seek reimbursement at or near the time of the deposition, and that

19

"post judgment requests for costs under Rule 26(b)(4)(E) is not a bar to recovery." *Id.* at *7. Additionally, the Court specifically noted that "Defendants point out that pursuant to Local Rule 54.1(a) they timely and properly sought costs under Rule 26(b) by seeking costs as part of its bill of costs within thirty days after the entry of final judgment." *Id.* So, the *Advanced Video Technologies* case does not lend support to the Plaintiff's argument.

Next the Plaintiff looks to *Se-Kure Controls, Inc. v. Vanguard Products Group, Inc.*, 873 F.Supp.2d 939 (N.D.Ill., 2012) and cites the judge in that case as writing "[A]n ample number of district court cases within the Seventh Circuit support the conclusion that a party's recovery of its own expert witness fees under Rule 26(b)(4)(E) is independent of Rule 54(d)," the timing of such a request, i.e., "after the 30-day period following entry of final judgment," is not a factor." (Internal quotes in original) (Doc. 73, P. 6). Plaintiff's argument is not well-founded. The *Se-Kure Controls, Inc.* case did not involve a question of the timeliness of a petition for expert fees as Plaintiff suggests. In fact, the court found: "Here, there is no issue of timeliness: both Defendants' original petition and amended petition for costs were filed within the 30–day time limit imposed by Local Rule 54.1(a)." *Se-Kure Controls, Inc. v. Vanguard Products Group, Inc.*, 873 F.Supp.2d 939, 944 (N.D. Ill. 2012). Further, the issue presented and discussed at length was whether the losing party could recover expert fees at all, and to a lesser degree, whether there was a need for a party to submit a motion for such fees *before* judgment.

> Unlike the losing party in *Chambers*, however, Plaintiff, the losing party in the instant case, does not challenge the prevailing Defendants' request for its expert witness fees as untimely; rather, Plaintiff argues that it, too, is entitled to recover its own expert witness fees irrespective of the fact that it

20

is not the prevailing party in this case. Although *Chambers* does not provide direct authority for this proposition, the Seventh Circuit did not explicitly state that only a prevailing party may recover expert witness fees post-judgment under Rule 26(b)(4)(E). Because the Seventh Circuit only had before it a petition for such costs from the prevailing party and not from the losing party, it had no occasion to rule on whether a losing party can also petition for the same Rule 26(b)(4)(E) costs that the prevailing party was seeking in *Chambers*. Nevertheless, the fact that the Seventh Circuit in *Chambers* analyzed the recoverability of the prevailing party's expert witness fees under the rubric of Rule 26(b)(4)(E) and not under Rule 54(d) strongly suggests that the recovery of a party's own expert witnesses' fees under Rule 26(b)(4)(E) is independent of any limitations set forth in Rule 54(d), including the condition that a party seeking reimbursement for costs be the prevailing party in a case.

*Id* at 951.

The Court, without determining whether a losing party may recover expert fees, finds that the Plaintiff's Motion for Expert Fees under 26(b)(4)E was not timely filed pursuant to Rule 54(d)(1) and SDLR- Rule 54(c), and therefore, that motion should be denied. But apart from lack of timeliness, there is another basis on which Plaintiff's Motion for Expert Fees should be denied.

### B. Manifest Injustice

By its text, the recovery of expert fees is not absolute under Rule 26(b)(4)E but it is instead tempered with the requirement that an award of such fees is inappropriate where it would result in a "manifest injustice." [4] It has been observed "[t]he purpose of the rule

---

[4] Plaintiff points *to Meredith v. Navistar Intern. Transp. Corp.*, 935 F.2d 124, 128 (7th Cir. 1991) for the proposition, according to Plaintiff: "the bottom-line question [under any approach] is essentially the same: was the losing party's position substantially justified and taken in good faith, or was that party simply out to harass its opponent?" However, there the Court was reviewing an award under ERISA, specifically 29 U.S.C. §1132. The case does not discuss ICFA, Rule 26(b)(4)E or Rule 54(d)(1). But, assuming that ERISA

"is to avoid the unfairness of requiring one party to provide expensive discovery for another party's benefit without reimbursement." *Id.* at 952 citing *United States v. City of Twin Falls, Idaho,* 806 F.2d 862, 879 (9th Cir.1986). Seemingly, if that purpose is not well-served by an award of fees, a manifest injustice may result. A brief review of the facts in this case is helpful here.

The Plaintiff's deposition where he revealed his lack of injury and the absence of materiality and proximate cause, was taken on February 13, 2023. Approximately four months later, on June 13, 2023, Plaintiff filed his Motion to Certify Class. (Doc. 32). Two weeks later, Defendant filed its Motion for Summary Judgment by which the Plaintiff should have been reminded that he testified in a manner that illustrated he lacked actual injury. (Doc. 33). Apparently still undeterred, about three months later, the Plaintiff tendered his expert, Dr. Matthews, for discovery deposition in connection with the Motion to Certify Class. The Defendant had no option but to take the deposition. Now, Plaintiff seeks reimbursement for Dr. Matthew's fees.

There is little specific guidance on the meaning of the term "manifest injustice" in the realm of Rule 26. Most considerations of this term come in the form of cases looking to whether the financial inability of party to pay is adequate to employ an "undue hardship" approach. See *John Hancock Life Insurance Company v. Clemente*, 2020 WL 7768403, at *2 (D.N.J., 2020); See *Nilssen v. Osram Sylvania, Inc.*, 528 F.3d 1352, 1361 (Fed.

---

fee shifting statute can be borrowed from for application here, the Court would reach the same result because Plaintiff's decision to press on with the case was not substantially justified.

Cir. 2008) (reasoning that "[t]here is nothing in the familiar understanding of the term 'manifest injustice' to suggest that it applies only to indigent parties"). The plain and ordinary meaning of the language contained in Rule 26(b)(4)(E) suggests that the exception is not limited to financial considerations, and that other circumstance might just as easily justify employing the "manifest injustice" exception. [5]

"Manifest injustice" is not defined by Rule 26 and the difficulty in assigning a specific definition to the term has been observed by other courts. However, helpful here is one court, after reviewing the advisory comments to Rule 16, which also uses the "manifest injustice" qualifier, determined "it appears that the Advisory Committee intended "manifest injustice" to encompass traditional notions of trial court discretion. In this case, the court felt it to be manifestly unjust to award fees to appellants, whom the court determined had engaged in litigation misconduct and inequitable conduct." *Nilssen v. Osram Sylvania, Inc.*, 528 F.3d 1352, 1361 (Fed. Cir. 2008).

In this Court's view, it would be manifestly unjust to foist upon Defendant an order to reimburse Plaintiff for Dr. Matthew's testimony when the Plaintiff's conduct in litigating this matter warranted a finding of "bad faith" under ICFA and Illinois Rule 137. Likewise, it would also be manifestly unjust to order reimbursement when her fees and

---

[5] "Manifest injustice" is not defined by Rule 26 and the difficulty in assigning a specific definition to the term has been observed by other courts. However, helpful here is the Seventh Circuit, after reviewing the advisory comments to Rule 16, which used before amendment the "manifest injustice" qualifier, determined "it appears that the Advisory Committee intended "manifest injustice" to encompass traditional notions of trial court discretion. In this case, the court felt it to be manifestly unjust to award fees to appellants, whom the court determined had engaged in litigation misconduct and inequitable conduct." *Nilssen v. Osram Sylvania, Inc.,* 528 F.3d 1352, 1361 (Fed. Cir. 2008). (Fed.R.Civ.P. 16, Advisory Committee Notes to 1983 Amendments).

the costs of her deposition could have been avoided simply by Plaintiff taking stock of his evidentiary predicament and realizing Dr. Matthew's anticipated testimony would not be enough to satisfy the damage requirement under ICFA.

For all these reasons, Plaintiff's Motion for Expert Fees should be denied.

## IV.    Disposition

For the reasons set forth herein, the Court **ORDERS** as follows:

1. Defendant's Motion for Attorney's Fees (Doc. 59) is **GRANTED**. Pursuant to Federal Rule of Civil Procedure 54(d)(2) and 815 ILCS 505/10a(c), the Defendant is hereby awarded the sum of $155,810.45 as attorney's fees and costs.

2. Plaintiff's Motion for Discovery Expert Fees (Doc. 63) is **DENIED**.

Dated: February 25, 2025

DAVID W. DUGAN
United States District Judge

24